CHARLES SCHULER *et al.* Appellees, *vs.* JOSHUA WILSON
*et al.* Appellants.

*Opinion filed October 28, 1926.*

1. SCHOOLS—*trustees are proper parties to condemn land for additional buildings and recreation grounds.* Under paragraph 5 of section 127 of the School law of 1909, as amended in 1923, the school trustees of a township are the proper parties to petition for condemnation of land for school purposes and not the board of education of the particular district making the improvement, as the title to be acquired is to be vested in the trustees, and the proceeding may be brought to condemn land for additional buildings and recreation grounds notwithstanding the act of 1917 authorizes districts to acquire such grounds by gift, donation or devise.

2. EMINENT DOMAIN—*adjacent property owner not entitled to damages upon condemnation of land for school playground.* The mere use of property as a school playground, even though causing a depreciation in the value of neighboring property, does not justify an action at law for damages or the assessment of compensation in an eminent domain proceeding, as there is no direct physical disturbance of any right which the neighboring property owner enjoys.

APPEAL from the County Court of Monroe county; the Hons. FRANK DURFEE and R. E. GAUEN, Judges, presiding.

D. E. KEEFE, and J. W. RICKERT, (HAROLD G. BAKER, of counsel,) for appellants.

A. C. BOLLINGER, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The trustees of schools of township No. 1, range No. 10, of Monroe county, began a proceeding in the county court at the instance and request of the board of education of school district No. 20 to assess compensation to the owner for 5.4 acres of land sought to be appropriated for the use of school district No. 20 for additional buildings and rec-

reation grounds. Joshua Wilson and Luella B. Wilson were made respondents as owners of the land in fee, and the village of Columbia, the Commercial State Bank of Waterloo and Harry Ahrens as claiming an interest in the land. The Wilsons demurred to the petition and also moved to dismiss it on the ground that the petitioner was not authorized to exercise the power of eminent domain, and these objections being overruled, Mrs. Wilson filed a cross-petition, alleging her ownership of valuable land adjoining the tract sought to be taken, which would be greatly damaged by the appropriation of the premises sought to be taken for use as a school playground. The court held that the petitioner had authority to condemn the property, and a trial resulted in a verdict assessing the compensation due Joshua Wilson at $3000 and finding that Luella B. Wilson would sustain no damage. An order was entered authorizing the petitioner to enter upon and use the land upon payment of the compensation awarded ($3000) by May 1, 1926. Joshua Wilson and Luella B. Wilson appealed.

By their assignments of error and argument the appellants question the right of the trustees of schools to exercise the power of eminent domain, and insist that the proceeding can be maintained only by the board of education of the school district. This question is one of statutory construction, for the proceeding is governed entirely by statute. In the act of 1857 to establish and maintain a system of free schools (Laws of 1857, p. 259,) the trustees of schools of each township were invested by section 39, in their corporate capacity, with the title, care and custody of all school houses and school house sites, but the supervision and control of them were expressly vested in the directors of each district in which the property was situated. In all the various revisions of the School law since that time, in 1872, 1889 and 1909, this same relation of the trustees and the school directors to school property has been preserved, the title, care and custody remaining in the trustees and

the supervision and control in the directors. In each one of these revisions it has been carefully provided that the trustees elected as provided by the particular act should be the successors to the trustees of schools elected in townships under the provisions of the preceding act, and all rights of property and rights and causes of action existing or vested in the trustees of schools elected under the previous acts should vest in the trustees of schools elected under the new act, as successors. The trustees of schools of each township is a municipal corporation for school purposes, and the authority of the legislature over its property, subject to constitutional limitations, is complete.

The courts have always recognized the legislative disposition whereby the title and ownership of the school houses and school sites are in the trustees but the immediate control, supervision and use of them are in the directors. In *Wilson* v. *School Directors,* 81 Ill. 180, it was held that school directors had no such interest as would enable them to maintain a bill to compel the conveyance of a school house site to the trustees of schools, even if it was the defendant's duty to make the conveyance; that the right to the conveyance, if there was any such right, was in the trustees, whom the law made the custodians of the title. In *Banks* v. *School Directors,* 194 Ill. 247, it was held that while the school directors are expressly authorized to agree upon the compensation to be paid for a school house site with the owners of the land, and in case of failure to agree may proceed to have the compensation determined in the manner which may be at the time provided by law for the exercise of the right of eminent domain, yet if they should agree upon the compensation to be paid for a school house site the conveyance would be made to the trustees of schools and not to them; and if they failed to agree, the method provided by law for vesting title for the public use is by a proceeding to condemn the land, and the title would have to be vested in the trustees. Therefore it was

held, reversing the judgment, that the proper and necessary petitioners were the trustees of schools, in whom, under the statute, the judgment of the court vests the title upon payment of the compensation. In *Thompson* v. *Trustees of Schools,* 218 Ill. 540, a petition for condemnation of a site for a township high school was filed by the trustees of schools pursuant to a resolution of the board of education asking the trustees to do so. The owners of the land moved to dismiss the petition on the ground that the trustees were without the power to exercise the right of eminent domain. The same section 32 of the School law was involved as in the case last cited, and it was held that boards of education were empowered to perform the same duties as school directors and to enter into negotiations with the owner of the site selected for a school house for its purchase, and if the compensation could not be agreed upon, to acquire the site by condemnation by the trustees of schools.

Section 127 of the School law of 1909 confers upon boards of education all the powers of school directors, subjects them to the same limitations, and provides that in addition thereto they shall have certain powers and duties, among which the fifth paragraph of that section authorized them to buy or lease sites for school houses, with the necessary grounds. The board of education of school district No. 44 in DuPage county having decided that the school grounds on which the school house had been built several years before were inadequate, resolved to purchase a lot adjoining the school site for a sum not to exceed $3800, and, being unable to agree with the owner on the purchase price, passed a resolution requesting the trustees of schools to institute condemnation proceedings to acquire the property. The owner objected that the trustees were without authority, at the request of the board of education, to prosecute the condemnation proceeding, but it was again held that the trustees, and not the board of education, were the proper parties to petition for the condemnation of the land.

(*Trustees of Schools* v. *McMahon,* 265 Ill. 83.)   In *Reiger* v. *Board of Education,* 287 Ill. 590, it was again held that under clause 5 of section 127 a board of education may, without a vote of the people, acquire additional land by purchase or condemnation, whenever in its judgment such additional land is necessary for the proper conduct of the school, if a school site has already been selected and is occupied by a school building in use for school purposes.

The appellants insist there is no room for argument as to the power of the board of education to condemn land under clause 5 of section 127, because the statute expressly says, "and the board of education shall have the right to take and purchase the same for the purpose of a school house site, either with or without the owner's consent, by condemnation or otherwise." There has been no substantial change in the language in this respect since section 127 was enacted in 1909, and it was with reference to this language that it was decided in *Trustees of Schools* v. *McMahon, supra,* that the trustees, and not the board of education, were the proper parties to petition for condemnation. The language of the act of 1889 imposing upon school directors the duty to have the compensation determined by the exercise of the right of eminent domain received the same construction in *Thompson* v. *Trustees of Schools, supra,* and *Banks* v. *School Directors, supra.*

In 1917 the legislature passed an act authorizing school districts to acquire real estate by gift, donation or devise for the purpose of establishing, maintaining and operating playgrounds, recreation grounds and athletic fields and to provide for the policing thereof. (Laws of 1917, p. 745.) Section 1 of this act authorized any school district to acquire by gift, donation or devise, real estate, and to hold the same, not to exceed ten acres in school districts having less than ten thousand inhabitants, for the purpose of establishing playgrounds, recreation grounds and athletic fields, and to equip, maintain and operate them, the cost

of such equipment, maintenance and operation to be paid from the building fund. It is contended that this was the first act of the General Assembly to confer upon school districts the right to acquire lands for playgrounds; that it limited this right to the methods of gift, donation or devise, and thereby manifested the intention of the legislature that where a school district could acquire land without cost it was at liberty to spend the public money and equip it in such manner as in the judgment of the school authorities was necessary; that since the statute definitely fixes the manner in which a school district may obtain lands for the purpose of playgrounds, the district has no authority, since the passage of the act, to acquire land in any other way for playgrounds. This argument ignores the provision of paragraph 5 of section 127 of the School law of 1909, which authorized the board of education to buy or lease sites for school houses, with necessary grounds, and the construction of that clause in *Trustees of Schools* v. *McMahon, supra,* that after a school house site has been selected in the manner prescribed by that clause the statute does not require the board of education to submit to the voters the question how much ground should be acquired for a site but commits this question to the judgment and discretion of the board. It also ignores the holding in *Reiger* v. *Board of Education, supra,* that a board of education has the power, under the general School law, to purchase the necessary ground for a playground and pay for it by tax levied for building purposes.

Paragraph 5 of section 127 was amended in 1923 and materially changed. (Laws of 1923, p. 607.) The change, however, does not affect the question under consideration. The power of the board of education to buy or lease grounds necessary for the purposes of the school, after the site has been selected, is to be exercised in accordance with the provisions of the statute. The amendment does restrict the action of the board of education in the purchase

or location of a school house site, or the purchase, building or moving of a school house, to cases where action has been authorized at an election called for the purpose in accordance with the provisions of paragraph 5. The amendment makes no change in the authority of the board of education in the subsequent purchase or lease of additional ground which may become necessary for the purposes of the school.

No complaint is made of the amount of damages assessed as the amount of compensation allowed to Joshua Wilson, but it is argued that the refusal of the jury to allow to Luella B. Wilson any damages was certainly due to a misapprehension of the facts or some prejudice on the part of the jury. None of her land was taken, but she owned land which was occupied by herself and her husband as a residence, immediately adjoining that which was taken. There was no physical interference with her property and no direct physical disturbance of any right which she enjoyed in connection with her property and therefore no basis for an assessment of damages on account of the use of the property adjacent to hers for a school playground. (*Rigney* v. *City of Chicago,* 102 Ill. 64; *Otis Elevator Co.* v. *City of Chicago,* 263 id. 419; *Illinois Power and Light Corp.* v. *Talbott,* 321 id. 538.) The mere use of adjacent property as a school playground, even though causing a depreciation in the value of neighboring property, would not justify an action at law for damages or the assessment of compensation in an eminent domain proceeding. *Barrows* v. *City of Sycamore,* 150 Ill. 588; *Frazer* v. *City of Chicago,* 186 id. 480; *City of Winchester* v. *Ring,* 312 id. 544.

The judgment is affirmed.     *Judgment affirmed.*