DUNLAP et al. v. ORWIG et al.

No. 32818.   Nov. 10. 1947.

*186 P. 2d 659.*

W. A. Barnett, of Okmulgee, for plaintiffs in error.

Thomas J. Horsley, Hicks Epton, and Dudley H. Culp, all of Wewoka, for defendants in error.

Steele & Boatmen, of Okmulgee, for defendants in error, C. W. Sandlin and Lucille Sandlin, as administratrix of the estate of G. L. Sandlin, deceased.

LUTTRELL, J. This action was commenced by the plaintiffs, Elizabeth Dunlap, Arthur Turner, Joella Crenshaw, and Chrisella Graham, against the defendants, S. S. Orwig, G. L. Sandlin, Mattie Wilson, and W. L. McVey, to secure the conveyance by defendants to plaintiffs of certain interests in the estate of Freelin Pruitt, deceased, and for an accounting. The defendant Mattie Wilson filed a cross-petition against the defendants, G. L. Sandlin, S. S. Orwig, and W. L. McVey. The defendant G. L. Sandlin died while the case was pending, and the case was revived and Lucille Sandlin, his administratrix, was made a party. Arthur Turner, one of the plaintiffs, also died during the pendency of the action and the cause was revived in the name of his administratrix, Iva Lee Turner. C. W. Sandlin, a son of G. L. Sandlin, was also made a party to the action. The case was tried as one of equitable cognizance, and the trial court rendered judgment in favor of the defendants and against the plaintiffs, and against the defendant, Mattie Wilson, on her cross-petition. Plaintiffs appeal. Mattie Wilson does not appeal from the judgment rendered against her on her cross-petition.

The facts essential to an understanding of the questions presented are that Freelin Pruitt in his lifetime was the owner of an undivided one-sixth interest in the mineral rights in and under 120 acres of land in Seminole county; that by virtue of certain judgments rendered in the district court of Seminole county and affirmed by this court in Gragg v. Pruitt, 179 Okla. 369, 382, 65 P. 2d 994, 1006, Freelin Pruitt became the owner of some part of three-eighths of the lease or working interest in the oil and gas attributable to his one-sixth interest in addition to his royalty interest; that Freelin Pruitt died on May 19, 1934, a resident of the city of Independence, Montgomery county, Kan., leaving a will devising his entire estate to his aunt, the defendant Mattie Wilson; that plaintiff, Elizabeth Dunlap, was an aunt of Freelin Pruitt, and the other plaintiffs were cousins, and all would have been entitled to share in his estate had he died intestate; that on May 23, 1934, plaintiffs employed the defendant Orwig as their attorney to attempt to recover for them some interest in the estate of Freelin Pruitt, deceased, for which services, whether recovery was had by litigation or by compromise and settlement, Orwig was to receive one-third of the recovery. By said contracts of employment, which were in writing, plaintiffs also appointed Orwig their attorney in fact to settle and compromise any actions instituted under the contracts, and to collect and receive rents, royalties, and moneys recovered, whether by litigation or by compromise and settlement. Thereafter, pursuant to his employment under said contracts, Orwig had certain negotiations with Mattie Wilson and G. L. Sandlin, who was acting as her business advisor and who had, during Freelin Pruitt's lifetime, by virtue of a contract with Freelin Pruitt, acquired a 40 per cent interest in his working or lease interest in the oil and gas in controversy, and pursuant to such negotiations the defendant, Mattie Wilson, plaintiffs, and other parties who claimed an interest in Freelin Pruitt's estate, entered into a contract in writing. This contract was dated May 18, 1935, and was made between Mattie Wilson, as first party, and

S. S. Orwig, Eliza Turner, Elizabeth Dunlap, Jessie Brown, Arthur Turner, Nora Stargell, Joella Crenshaw, and Chrisella Graham, as second parties. It provided that Mattie Wilson would make and deliver to W. L. McVey, an attorney in Independence, Kan., an assignment to second parties covering an undivided three-eighths of whatever interest in the working interest, or lease interest, should be vested in Mattie Wilson upon the final distribution of Freelin Pruitt's estate under his last will and testament, and a mineral deed for an undivided one-half interest in the royalty interest formerly owned by Freelin Pruitt; that the assignment and mineral deed were to be delivered to McVey to be held by him until the final closing of the estate, and then to be delivered to S. S. Orwig for second parties. The contract further provided that the second parties would file a petition or motion of dismissal in a case pending in the Federal court styled Freelin Pruitt, by his next friends, Elizabeth Dunlap and Eliza Turner, v. G. L. Sandlin, and would also file a petition for dismissal of an action pending in the superior court of Seminole county styled State of Oklahoma v. G. L. Sandlin; and that second parties would claim no further right, title or interest in the estate of Freelin Pruitt, except the interests covered by the assignment and mineral deed aforesaid, and would not contest the probating of the estate or the appointment of Mattie Wilson as ancillary executrix in Seminole county. It also provided that the assignment made by Mattie Wilson should cover funds involved in the case of Gragg v. Pruitt, above referred to, and impounded funds held by Tidewater Oil Company and Superior Oil Corporation, and that the latter should be divided one-half to Mattie Wilson, party of the first part in said contract, and the remaining one-half to parties of second part in proportion to their interest in the mineral rights conveyed by the mineral deed agreed to be made by Mattie Wilson. This contract was signed by all the parties therein named except Orwig, who for some reason not shown in the record, did not execute it, although he was named as one of the parties of the second part and his name appears in the acknowledgment.

At sometime, the exact date not being shown in the record, but prior to the execution of the above contract, the will of Freelin Pruitt was admitted to probate in Montgomery county, Kan., and ancillary proceedings thereafter were instituted in Seminole county in which Mattie Wilson, and S. S. Orwig were named joint administrators. On May 21, 1934, Mattie Wilson by contract ratified and confirmed the conveyance by Freelin Pruitt to G. L. Sandlin of 40 per cent of the working interest in the oil and gas in the land in controversy owned by Freelin Pruitt, and appointed Sandlin her attorney in fact to act for her in the management of her affairs in connection with the estate of Freelin Pruitt. On February 18, 1933, G. L. Sandlin quitclaimed all interest he had received from Freelin Pruitt to C. W. Sandlin. On January 14, 1943, Mattie Wilson conveyed to C. W. Sandlin all of her right, title and interest in the working interest in the oil and gas in said land.

In December, 1936, plaintiff Elizabeth Dunlap discharged Orwig as her attorney and employed Honorable A. S. Wells, and in May, 1937, plaintiffs Joella Crenshaw, Chrisella Graham, and Arthur Turner discharged Orwig and employed Honorable O. H. Searcy as their attorney. On May 25, 1937, Elizabeth Dunlap, with the approval of her then attorney, conveyed all her interest in the working interest and all accruals thereto to Orwig for a consideration of $4,000 cash paid to her. On October 31, 1937, the other plaintiffs, with the approval of their then attorney, made a similar conveyance of all their right and title to the working interest and all accruals therefrom for the sum of $2,400 plus a $300 fee paid by Orwig to Judge Searcy. This conveyance was made to

Sarah Blanche Orwig. These conveyances or assignments of the working interest included all sums derived therefrom, collected from Superior Oil Corporation or Tidewater Oil Company in the case of Gragg v. Pruitt hereinabove referred to, and provided that they should not affect the royalty interest of the parties, but that Orwig would procure the delivery of the title to their royalty interest to them as expeditiously as possible. At the time of the trial of this action, March 25, 1946, the ancillary administration proceeding on the estate of Pruitt was still pending and not closed, but Mattie Wilson and Orwig had been removed as administrators.

Only the working interest of the oil and gas in the land which plaintiffs were to receive under the contract of May 18, 1935, is involved in this action, the evidence establishing beyond controversy that the accruals on the royalty interest which they were to receive under that contract have at all times been paid to and accepted by them, and there being no contention as to their ownership of such royalty interest.

Plaintiffs first contend that all defendants conspired together to wrongfully deprive plaintiffs of their interest in the estate of Freelin Pruitt. But they do not seek to rescind or cancel the contract of May 18, 1935, but affirm its validity and binding effect. In such case, if they were by the fraudulent acts of defendants deprived of a part of their rightful interest in the property, they must either rescind the contract, and offer to restore what they have received under it, or bring an action for damages sustained by reason of the alleged fraud. They may not both affirm and repudiate the contract. Wrightsman v. Brown, 181 Okla 142, 73 P. 2d 121; 13 C.J. p. 395, §304. Having failed to pursue either course they were not entitled to recover from the defendants jointly.

As to defendant Orwig, plaintiffs contend that under the contract of May 18, 1935, as their attorney, and as administrator, he became trustee for them, and that he violated the trust in that he: (1) failed to promptly administer the estate of Pruitt; (2) received money as such administrator for which he has not accounted; (3) that he took conveyances from plaintiffs of their interest in the working interest in the oil and gas, and money accrued therefrom, while acting as their attorney and while he was administrator of the estate of Pruitt; (4) that he falsely represented that the judgments in the Gragg causes were lost to the estate, and (5) that he made no effort to collect moneys from G. L. Sandlin belonging to the estate, which Sandlin had collected while Pruitt was a minor, or to recover the 40 per cent interest which Sandlin procured from Pruitt.

But the uncontroverted evidence discloses that with full knowledge of the facts, and after they had discharged Orwig as their attorney, plaintiffs conveyed to him all their interest in the working interest oil and gas, and all money accruals therefrom, which they then owned or were entitled to under the contract of May 18, 1935. This action on their part was taken with the approval of their then attorneys, one of whom testified at the trial. These conveyances were apparently made in settlement of all their differences with Orwig, and divested them of all interest in the subject matter of this action, including all moneys accrued from the working interest oil and gas which had not been received by them. In this action they did not seek to rescind or cancel these conveyances, and do not tender to or offer to restore to Orwig the consideration paid by him to them therefor. They, in effect, seek to recover from Orwig the property so conveyed to him on the theory that the conveyances were ineffective because of fraud or a trust relationship. We

know of no legal principle which will permit them to so recover the property conveyed except that of rescission of the contract and offer to restore. 15 O.S. 1941 §§233, 235.

In the instant case the evidence wholly fails to establish any fraud on the part of Orwig. His failure to close up the administration of the estate of Pruitt, after plaintiffs transferred their interest to him, became a matter of no importance to them. Nor did his failure to attempt to collect from Sandlin constitute a breach of trust, since Mattie Wilson, as sole devisee under the will of Pruitt, was the only person who could call Sandlin to account. Nor did the fact that Orwig, at the time he acquired the interest of plaintiffs, was one of the administrators of Pruitt's estate, deprive him of the right to acquire the interest of plaintiffs therein, if the transactions were fair. Johnson v. Johnson, 85 Okla. 274, 206 P. 205; Dees v. Dees, 169 Okla. 598, 38 P. 2d 508. From the record it appears that the transactions were fair, and the consideration paid by Orwig adequate.

Plaintiffs charge that Orwig falsely stated, both orally to them, and also in a report filed by him as administrator, that the judgment in the case of Gragg v. Pruitt, above referred to, was lost by the estate. Defendants call attention to the decision in Sandlin v. Gragg (C.C.A. 10) 133 Fed. 2d 114, in which a compromise of the controversy involved in that action, by which Pruitt released the judgment obtained by him against Gragg, was upheld. This establishes the truth of Orwig's statement that the estate obtained nothing by the judgment.

As to the defendants C. W. Sandlin and Lucille Sandlin, administratrix, the evidence wholly fails to establish that they had received any portion of the moneys or working interest oil which plaintiffs acquired under the contract of May 18, 1935. It clearly appears that the interest of the Sandlins in the work-ing interest oil was obtained either from Freelin Pruitt in his lifetime or from Mattie Wilson after Pruitt's death. It is, therefore, clear that so long as plaintiffs affirm the contract of May 18, 1935, and receive the benefits therefrom, they have no cause of action against the Sandlins, and that any recovery of any interest held by the Sandlins would be for the benefit of Mattie Wilson, and could be had only in an action brought by her.

We hold that the judgment of the trial court was not clearly against the weight of the evidence, neither was it contrary to law.

The last contention of plaintiffs is that the trial court erred in excluding the testimony of the witness Duke. The record discloses that after preliminary questions establishing the presence of this witness in Tulsa on May 18, 1935, he was asked if he attended any preliminary discussions between G. L. Sandlin and Orwig with reference to the contract between plaintiffs and Mattie Wilson, and testified that he did. He was then asked the question "What was the purpose of assembling these people in Tulsa and entering into that contract as expressed by G. L. Sandlin and S. S. Orwig?" This was objected to as calling for a conclusion of the witness, and the objection was sustained. He was then asked whether or not Sandlin and Orwig signed that contract. This was objected to on the ground that the contract spoke for itself, and this objection was sustained. He was then asked the following question: "Tell the court, if you know, why they didn't sign it?" to which an objection was made on the ground that the question was incompetent, irrelevant and immaterial, which objection was sustained by the court, and exceptions allowed. Without further questioning the witness plaintiffs offered to prove that this witness would testify that prior to the execution of the contract of May 18, 1935, he heard Orwig and Sandlin enter into a verbal agreement that they

would, by procuring the execution of the contract and continuation of administration proceedings, defraud the plaintiffs and acquire the title to the leasehold interest of plaintiffs without expending any of their own funds. No question was asked the witness with reference to the purported conversation. The trial court properly rejected the offer of proof. It apparently went to the invalidity of the first contract, and if plaintiffs sought to connect this conversation with the subsequent transfers to Orwig, no question was asked the witnesses which would direct the court's attention to the relevancy or materiality of such testimony. Error may not be predicated ·upon the trial court's refusal of the offer under such condition of the record. Moore v. School Dist. No. 23, 94 Okla. 133, 221 P. 51; Rittenhouse v. Johnson, 161 Okla. 169, 17 P. 2d 457; Tandy v. Garvey, 115 Okla. 214, 242 P. 546.

Affirmed.

DAVISON, V.C.J., and RILEY, BAYLESS, GIBSON, and ARNOLD, JJ., concur.