**SHERIDAN DRIVE-IN THEATRE, INC.,**
Appellant (Plaintiff below),

v.

**STATE of Wyoming, J. R. Bromley, as State Highway Superintendent of Wyoming, and State Highway Commission of Wyoming,** Appellees (Defendants below).

No. 3135.

Supreme Court of Wyoming.

Aug. 16, 1963.

R. G. Diefenderfer, and Richard H. Bennett, Sheridan, for appellant.

Norman B. Gray, Atty. Gen., Glenn A. Williams, Asst. Deputy Atty. Gen., and Robert C. Kelly, Special Asst. Atty. Gen., Cheyenne, for appellees.

Before PARKER, C. J., and HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

This is an action in inverse eminent domain in which the plaintiff, Sheridan Drive-in Theatre, Inc., has sued for damages from the State of Wyoming for an alleged damaging of its outdoor Starlight Theater property. The claim grows out of construction of a new highway—U. S. Interstate Highway 90. Although none of claimants property was taken for the highway, it is contended lights from passing automobiles on the highway, at nighttime, make it undesirable for the property to be used any longer as a theater.

A claim of damages in the amount of $16,435.98 for decrease in the market value of the property was made under the provisions of Art. 1, § 33, Wyoming Constitution, which reads:

"Private property shall not be taken or damaged for public or private use without just compensation."

The case was tried to a jury in the District Court of Sheridan County. At the end of plaintiff's evidence a verdict was directed by the court in favor of the state and against the claimant, and judgment thereon was entered. The theater company has appealed.

Plaintiff's theater was never operated after the summer of 1958, and Highway 90 was not opened for traffic until October 22, 1960. However, there was testimony tending to show that flashes of light from the highway made the property undesirable for open-air theater operations and that plaintiff's business at this location was abandoned *partially* on account of the construction and subsequent use of Highway 90. There was also testimony in which witnesses undertook to fix a lessened market value on plaintiff's property after the highway improvement.

The trial court, according to its decision, considered the case one in which the property owner had to assume the ordinary hazards of traffic conditions. It also found the damages, if any, to be speculative and conjectural and such that there would be no way of presenting the matter to the jury.

In Morrison v. Cottonwood Development Co., 38 Wyo. 190, 266 P. 117, 123, recognition was given to the fact that injury to a business conducted upon lands taken under eminent domain has been generally held by the courts not to constitute an element of just compensation, unless a statute expressly allows it. Of course, we have no such statute.

On that subject, the idea is expressed in 4 Nichols, Eminent Domain, § 13.3 [1], p. 443 (Revised 3d Ed.), that the business conducted upon land has no determinative influence upon its market value, except insofar as it illustrates one of the uses to which the land may be put. This is followed with a statement that the general rule in this country is that such business and the fruits thereof are "too uncertain, remote and speculative" to be used as the criterion of the market value of the land upon which such business is conducted.

If the rule so stated is indeed the general rule in this country, then the trial court was entirely correct in holding that the damages claimed by the owner in this instance were too speculative and conjectural to form the basis for an award. Actually, it was agreed by stipulation in the case that the element of financial profit or loss of the Starlight Theater had no bearing on plaintiff's cause of action and that the measure of damages, if any, would be the difference between the market value of the property immediately before and after October 22, 1960.

We fail to see how, without pure speculation and conjecture, a difference in the market value can be asserted or claimed under the circumstances of this case. It is represented to us by counsel for the claimant that the Starlight property was purchased by a family corporation, which also owned and operated other theater properties, for reasons of economic betterment, "protection against competition" and other inducements.

One of the officers of the corporation testified members of his family owned the Skyline drive-in theater; that they had dis-

covered from operating in 1958 it would be more economical to operate one of the two drive-ins, either the Skyline or the Starlight; that actually they were more favorable to operating the Starlight but because of the proposed highway change operated the Skyline instead. This witness, who incidentally was the only member of the plaintiff-corporation to testify, was questioned and gave answer as follows:

"Q. Well, I'm not satisfied with your answer. Then, was it a matter of economics rather than the highway that caused you to close the Starlight as of that time and continue to operate the Skyline? A. Well, I think I have answered that 'yes'. * * *"

This testimony alone shows how impossible it would be for a jury to tell how much, if any, the market value of plaintiff's property was influenced by the highway and how much the difference in market value, if any, was caused by a "matter of economics." There was no evidence indicating that the Sheridan area needed and would support a drive-in theater in addition to the Skyline, or if so that plaintiff's property was the only suitable property for such a business.

In the absence of proof that this property had a special advantage and hence an added value because of its suitability for a business likely to succeed and be profitable, all opinions expressed as to a difference in market value before and after the opening of Highway 90 would be mere speculation and conjecture. Moreover, it was not claimed by any of the witnesses that direct lights from the highway would interfere with a showing of pictures on plaintiff's land, but rather that "side light" from a distance of 650 to 900 feet or more would be bothersome.

On the whole, we fail to see anything but guesswork in plaintiff's attempt to show a lessened market value of its property, especially since no theater business was conducted on the land after the highway was in use. No direct evidence of interference or the extent of interference from traffic lights was or could be shown. A jury could not be expected to fix a before and after market value based solely upon the speculations, guesses and opinions of plaintiff's witnesses.

### Other Considerations

We find the courts quite uniform in holding that a property owner may recover under the "or damaged" provision of a state constitution only when he has sustained special damage differing in kind and not merely in degree from that sustained by the public generally. Jarnagin v. Louisiana Highway Commission, La.App., 5 So.2d 660, 662–663; City of Colorado Springs v. Weiher, 110 Colo. 55, 129 P.2d 988, 989; Wolfram v. State by Burnquist, 246 Minn. 264, 74 N.W.2d 510, 512; Locascio v. Northern Pac. R. Co., 185 Minn. 281, 240 N.W. 661, 662.

The damage for which compensation is to be made is a damage to the property itself. The property must suffer some diminution in substance or be rendered intrinsically less valuable. A mere personal inconvenience or injury, such as damage to a business, is not sufficient. People ex rel. Department of Public Works v. Symons, 54 Cal.2d 855, 9 Cal.Rptr. 363, 357 P.2d 451, 453; City of Winchester v. Ring, 312 Ill. 544, 144 N.E. 333, 336, 36 A.L.R. 520; Wilson v. Kansas City, Mo., 162 S.W.2d 802, 805.

Otherwise stated, this special damage requires a definite physical injury or impairment of a right appurtenant to the land, such as: Drying up wells and springs, destroying lateral supports, preventing surface waters from running off adjacent lands or running surface waters onto adjacent lands, or depositing foreign materials on neighboring lands. Board of Education of Logan City School District v. Croft, 13 Utah 2d 310, 373 P.2d 697, 699; see also Schuler v. Wilson, 322 Ill. 503, 153 N.E. 737, 740, 48 A.L.R. 1027; and Richert v. Board of Education of The City of Newton, 177 Kan. 502, 280 P.2d 596, 599.

**600**

In the eminent domain proceedings with which we are now concerned, the evidence failed to show any actual physical injury to claimant's property, or the impairment of a right appurtenant thereto. Although there was some evidence of personal injury by reason of damage to a prospective business, which plaintiff *might have* chosen to pursue if a change in the highway had not been made, that did not mean the property itself had suffered any diminution in substance or that it had been rendered intrinsically less valuable.

As stated in Annotation 48. A.L.R. 1031 and 18 Am.Jur., Eminent Domain, § 140, p. 767, it is generally agreed the damage clause of state constitutions has no application to depreciation in the market value of land caused by some public improvement in close proximity thereto, where there is no physical injury to the property or impairment of any right appurtenant thereto, if the public use is not of such character as to constitute a nuisance. See also City of McAlester v. King, Okl., 317 P.2d 265, 273.

Concerning the question as to whether the public's use of Highway 90 is such as would constitute a nuisance, our court has, in keeping with other jurisdictions, adopted the principle that the matter of a nuisance is determined by the effect an annoyance has on ordinary persons and businesses. The test is not what effect the matter complained of would have on persons who use their land for purposes which require exceptional freedom from deleterious influences, but what effect it would have on persons who use their land for ordinary purposes. Erickson v. Hudson, 70 Wyo. 317, 249 P.2d 523, 527–528. See also Gunther v. E. I. Du Pont De Nemours & Co., D.C.W.Va., 157 F.Supp. 25, 32; appeal dismissed 4 Cir., 255 F.2d 710.

Unlike smoke, gases, dust and noxious odors, or even disturbing noises, light is not inherently harmful and it does not unreasonably or substantially interfere with the ordinary use and enjoyment of property. Martin v. Williams, 141 W.Va. 595, 93 S.E.2d 835, 849, 56 A.L.R.2d 756; Amphitheaters, Inc. v. Portland Meadows, 184 Or. 336, 198 P.2d 847, 854, 5 A.L.R.2d 690.

The claimant in this case relies heavily upon numerous airplane-disturbance cases where the noise from low-level flights over private land has been held to be a nuisance and actionable. See, for example, Thornburg v. Port of Portland, Or., 376 P.2d 100. However, those cases clearly represent a class of cases where the ordinary use and enjoyment of property are substantially interfered with.

In the case at bar, on the other hand, the ordinary use and enjoyment of property are not interfered with. Only the theater company, because of its extraordinary and unusual use of its property, can claim its use is interfered with.

Moreover, we are confronted with the fact that numerous precedents are available for the proposition that airplane disturbances may constitute a nuisance and give rise to a claim for compensation, based upon a damaging without a taking. But we find no case in which it has been held that light alone constitutes a nuisance, because it damages one whose use of his land was of a peculiarly delicate and sensitive character. Amphitheaters, Inc. v. Portland Meadows, supra, at 198 P.2d 857.

In Annotation 5 A.L.R.2d 705, 706, it is said private-nuisance light cases, considered as a whole, seem to warrant the generalization that if the intensity of light is strong enough to seriously interfere with an occupation which is no more than ordinarily susceptible to light, it is a nuisance; if not, there is no cause of action. The courts will not afford protection to hypersensitive individuals or industries.

The total absence of any evidence tending to show a damage to the property itself or the impairment of a right appurtenant thereto, coupled with a failure of proof as to an actionable nuisance, illustrates conclusively, we think, that it would be pure speculation and conjecture to try to determine to what extent, if any, plaintiff's property (as distinguished from its

business) has been depreciated in market value by the building of a new highway.

This becomes then one of those cases in which the damage, if any, sustained by claimant is classified as *damnum absque injuria*, or a damage without legal remedy.

The directed verdict and judgment are affirmed.