429 P.2d 945

James A. MORTENSEN, Jr., and Florence N. Mortensen, his wife, Appellants,

v.

BERZELL INVESTMENT COMPANY, a partnership, Morris L. Kolodny and Ann P. Kolodny, his wife, and Sol Kotz and Luba Kotz, his wife, Appellees.

No. 8405.

Supreme Court of Arizona,
In Division.

July 12, 1967.
Rehearing Denied Nov. 14, 1967.

Christy, Kleinman, Peterson, Hoyt & Fuller, Phoenix, for appellants, by John Dickinson, Phoenix.

Kramer, Roche, Burch & Streich, Phoenix, for appellees.

WILLIAM A. HOLOHAN, Superior Court Judge.

The Appellees, purchasers under a real property sales contract, filed action against the vendors, Appellants, to have the con-

tract rescinded. The Superior Court of Maricopa County heard the case, decided the issues in favor of the purchasers, ordered the contract rescinded, and granted judgment to the purchasers for the amount of their payments to the vendors under the contract. The vendors filed a timely appeal from the judgment.

A short review of the facts is necessary for a determination of this cause, and, considered in the light most favorable to sustaining the findings of the trial court, the record discloses that in December, 1959, the purchasers and vendors entered into a contract for the sale of approximately 108 acres of land owned and used by the vendors as a farm. The contract was subject to two conditions, namely, that the land be zoned industrial and that there be a trust agreement providing for release of parcels for sale to third parties free of the main obligations between the vendors and purchasers.

An escrow agreement was signed by the parties in early January, 1960, which provided for a closing date of March 31, 1960. Thereafter the escrow agreement was amended a number of times to extend the closing date to allow the vendors more time to secure the necessary zoning.

Believing that industrial zoning would not be granted by Maricopa County, the vendors, with the knowledge and consent of the purchasers, contacted representatives of the City of Tempe about the possibility of industrial zoning if the property were annexed to that city. Meeting with sympathetic response the vendors, again with the knowledge and consent of the purchasers, joined with other land-owners to have the area, including the land in question, annexed to the City of Tempe.

The purchasers had received possession of a portion of the land from the vendors in approximately the middle of January, 1960, and in March, 1960, the purchasers moved equipment to the land to pursue their business operation which consisted of melting aluminum airplane parts into aluminum ingots. In May, 1960, the area was annexed to the City of Tempe. A demonstration of their operation was given to representatives of the zoning board of the City of Tempe to satisfy that group that the planned operation would not be offensive to neighbors or detrimental to the city.

The required industrial zoning was finally secured in July, 1960; the trust agreement was prepared and signed in the latter part of July, 1960, and the escrow was finally closed in August, 1960.

The purchasers conducted their aluminum furnace operation from about March, 1960, to and including August, 1960, some five months. In January, 1961, the purchasers advertised the land for sale, but no sale was secured.

The purchasers made the necessary payments required under the contract, and, since they were using only a portion of the land, the vendor leased from them for the year 1961 some 70 acres for farming, the house on the premises and another two acres adjacent thereto. The vendors agreed to pay $4,500.00 for the farm land and an additional $300.00 for the use of the house. A total of $3,800.00 was paid by the vendors to the purchasers, and the remaining $1,000.00 was to be paid by December 31, 1961.

In June, 1961, the purchasers learned that the Superior Court of Maricopa County had declared the ordinance which annexed the subject property void. The purchasers confirmed this information through officials of the City of Tempe, who also advised that the city intended to appeal the decision. In June, 1961, the purchasers gave notice to the sellers that the property would have to have industrial zoning within 60 days or they would rescind. There was no response from the vendors, and in August, 1961, a cancellation notice was sent by the escrow company, at the direction of the purchasers, declaring the agreement and trust cancelled in 13 days unless the sellers complied with the requirement for zoning. Finally, in the early part of October, 1961, the purchasers offered to return the property, refund all monies received

from the vendors, and the purchasers demanded that the sellers return to them all monies paid by them as purchasers. The vendors failed to respond, and on October 31, 1961, the purchasers filed the present action seeking rescission of the contract.

The City of Tempe did in fact appeal from the decision of the Superior Court declaring the annexation invalid, and the appeal was pending at the time the purchasers demanded rescission and filed the present action. The appeal was pending until May, 1962, at which date the city dismissed its appeal in the annexation case.

While the purchasers' rescission action was pending, the vendors in January, 1962, gave notice of forfeiture through the title company for failure of the purchasers to pay the first installment of the 1961 taxes, the mortgage payment assumed under the contract and the annual installment on the contract. The described payments not having been cleared up within the time set forth in the notices, the vendors treated the interests of the purchasers as forfeited, and thereafter in 1963, the vendors re-sold the land to a third party, who applied for and received industrial zoning from Maricopa County in June, 1963.

The able trial judge concluded that the facts in the case disclosed a mutual mistake of fact and failure of consideration to the purchaser which entitled the purchaser to rescission of the contract. We agree that there was a mutual mistake by the parties in this case and we further agree that the matter of zoning was an essential part and condition of the contract. Thomas v. Krug, 139 Cal.App.2d Supp. 941, 294 P. 2d 785. The problem essentially in the case is whether the purchasers are entitled to the equitable remedy of rescission. Ordinarily a mutual mistake of material fact or a failure of consideration of an essential part of the contract will justify rescission. 91 C.J.S. Vendor and Purchaser § 157c. Fish v. Valley Nat. Bank of Phoenix, 64 Ariz. 164, 167 P.2d 107. Mahurin v. Schmeck, 95 Ariz. 333, 390 P.2d 576. Re-

scission, however, is an equitable remedy, and he who seeks equity must do equity. Sandia Development Corp. v. Allen, 86 Ariz. 40, 340 P.2d 193. Arizona Coffee Shops, Inc. v. Phoenix Downtown Park. Ass'n, 95 Ariz. 98, 387 P.2d 801.

The purchasers, soon after learning of the decision declaring the annexation ordinance invalid and with knowledge that the matter was being appealed, demanded that the vendors secure industrial zoning, and further they demanded that the zoning be secured within 60 days of their letter of demand. Needless to say no other county or municipal authority would take jurisdiction over the land in question much less grant zoning while the annexation matter was on appeal. The vendors could not comply with the demands of the purchasers because what they required was impossible of accomplishment within the time limit set by the purchasers.

The purchasers recognize that the judgment was not final while on appeal:

"Exhibit 17 is the judgment * * * declaring the annexation of the subject property void and this judgment became final upon dismissal of the appeal." (Appellee Brief Page 17)

If the decision of the trial court was reversed, the annexation was valid and the purchasers had industrial zoning on the land; on the other hand if the decision declaring the annexation invalid was upheld, the purchasers would then be without the zoning for which they bargained. The final result was not known when the purchasers were making their demands. There is no showing in the record of any substantial harm to the purchasers in awaiting the outcome of the annexation question. There is some testimony that the purchasers were looking for additional capital to re-start their furnace operation, but they had been unsuccessful for months before the annexation decision, and they abandoned their efforts when they heard of the annexation decision. There is also evidence that the purchasers were trying to sell the entire property, but there was no evidence offered

to show the reduction, if any, in the value of the land by reason of the loss of industrial zoning. It must also be noted that the land was producing an income in that some 70 acres were being farmed by the vendors under a cash lease with the purchasers, and the vendors were current in their payments.

The parties stipulated that it took between 55 and 77 days to process a change of zoning in Maricopa County. The purchasers argue that over three months were actually given to the vendors to secure zoning, but they overlook the fact that, until the annexation matter was resolved, the vendors could not apply for county zoning.

■ The appeal was dismissed in May of 1962, some six months after the purchasers had declared the contract rescinded. The purchasers did not give the vendors an opportunity to secure proper zoning after the judgment on the annexation question became final. The record discloses that such zoning was not an impossibility because a later purchaser did in fact secure zoning. In order to avail themselves of the remedy of rescission equity required that the purchasers should have given the vendors a reasonable opportunity after the judgment became final within which to secure the necessary zoning.

■ It is of course essential to justify the rescinding of a contract that the rescinding party offer to place the other party in status quo, and this includes the offer to credit the vendors with a reasonable rental value for the time during which the land was occupied. Cole v. Atkins, 69 Ariz. 81, 209 P.2d 859. Mahurin v. Schmeck, 95 Ariz. 333, 390 P.2d 576. The offer and demand of the purchasers was stated as follows:

"Pursuant to authority from our clients, possession of the subject property is hereby tendered to your clients and our clients also hereby offer to return all monies recived by them from your clients, together with all other things of value, if any, received by our clients. A

demand is hereby made for the immediate return by your clients of the monies paid by our clients in connection with this transaction. * * * It is the desire of our clients to place themselves and your clients back in status quo, insofar as possible."

■ The purchasers had used a portion of the property for some five months to conduct their furnace operation, and it is conceded by the purchasers that there was a sizeable quantity of dross and ashes in the area used for the furnace operation, and it is further conceded that this waste material was left upon the premises and never removed. The purchasers, to secure the right of rescission, should have offered to pay for the use of the land which they had occupied and used for their furnace operation and upon which they had left the waste material, and in order to restore the vendors to the status quo the purchasers should have offered to remove the waste material from the land in question.

Since the purchasers were premature in their demand for rescission, and, since the terms of their demand for rescission were not legally sufficient, a decree rescinding the contract should not have been granted.

The vendors sought to forfeit the interests of the purchasers in the contract in January, 1962, but it is contended that the vendors had not performed under the contract, and a vendor of a contract may not forfeit another if he himself is in default. 91 C.J.S. Vendor & Purchaser § 136. Whether the vendors had fully performed depended upon a decision as to whether the annexation decision was final, but in May of 1962 the decision became final. The record does not disclose that the vendors gave a second notice of forfeiture. The record does disclose however that since October 1961 the purchasers have failed and refused to perform under the contract and trust and have treated them as terminated. Since that time the vendors were required to make the mortgage payments and to pay the taxes on the property in question.

The conduct of the purchasers showed that any offer of performance by the vendors after the annexation decision would not have been accepted, so the vendors were justified in not offering to perform. Lee v. Nichols, 81 Ariz. 106, 301 P.2d 1022. Since the purchasers treated the contract as terminated before the vendors had a reasonable opportunity to perform fully, and the purchasers have refused to perform according to the terms of the contract, electing to stand on their demand for rescission, the vendor is entitled to have the contract declared terminated, and the interests of the purchasers forfeited.

The decision of the trial court is reversed, and the cause is remanded to that court to enter judgment denying rescission and declaring the interest of the purchasers forfeited.

BERNSTEIN, C. J., and McFARLAND, V. C. J., concur.