Paul KIPP, Appellant (Plaintiff below),

v.

Thomas E. AGEE, Rose K. Agee, H. W. Mullendore, and Frances Mullendore, Appellees (Defendants below).

No. 3709.

Supreme Court of Wyoming.

Aug. 11, 1969.

Rehearing Denied Sept. 23, 1969.
See 458 P.2d 728.

David Norman Burns, Jackson, for appellant.

Ted C. Frome, Afton, for appellees.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Paul Kipp brought an action for declaratory judgment and for anticipatory damages in connection with a real estate contract. Under the contract Kipp had agreed to purchase land in Teton County from Thomas E. Agee and wife and H. W. Mullendore and wife, who were named as defendants.

Kipp's suit calls for an interpretation of that part of the sales agreement which reads:

"That portion of H.E.S. 193, Sec. 14, T. 39 N., R. 116 W., described as follows: That portion of the above mentioned H.E.S. 193 lying easterly of HWY. 187 and northerly of Horse Creek, EXCEPT * * *. (Property contains approximately 15.78 acres, more or less). * * *

"The above described property is Lot #3, including both Sections A and B as shown on the attached plat identified by the signature of Thos. E. Agee and H. W. Mullendore and the sellers guarantee that said area contains not less than 15 acres and if less than 15 acres, the price is to be adjusted in accordance with the area conveyed. * * * A correct survey is to be furnished by the buyer and an amended contract will then be signed by all parties."

The patent for the homestead entry which is termed H.E.S. 193 was not introduced in evidence and does not appear in the record. However, we understand from statements of counsel on either side, and from the testimony of a surveyor who testified at the trial, that H.E.S. 193 consists of Tract A and Tract B.

The two tracts are not contiguous. They lack 33 feet of joining and this leaves a 33-foot corridor between Tracts A and B. Thus, the land to be conveyed is divided into two approximately equal parts. The corridor strip has been designated as Tract C.

It is agreed none of the parties knew of the existence of Tract C or knew Tracts A and B did not join when the sales agreement was entered into. After the agreement was entered into, it was discovered the United States had reserved Tract C for access and still owns the strip. There is no evidence on the ground of a passageway between Tracts A and B.

Counsel for purchaser-Kipp states when Tract A and Tract B are platted by a competent survey, it discloses that H.E.S. 193 does not close but leaves Tract C, the intended access road of the United States Government, which was never patented or otherwise conveyed to private owners.

We call attention to those words in the contract which limit the land description to "That portion of H.E.S. 193 * * * described as follows: That portion of the above mentioned H.E.S. 193 lying * * *." Twice the description refers to a certain "portion" of H.E.S. 193.

When appellants' attorney states that H.E.S. 193 leaves Tract C which was never patented to private owners, he confesses that Tract C was not a part or "portion" of H.E.S. 193. Therefore, sellers

did not, as far as the written contract is concerned, agree to sell Tract C or any other land not a part of H.E.S. 193.

## Equity Considerations

Notwithstanding the strict legal effect of the contract, however, plaintiff seeks equitable relief based on a mutual mistake in the contract. He contends the parties talked about one parcel of land only and intended the sale to cover the land sellers thought they owned and the land buyer thought he was buying, including Tract C. In effect, the trial court was asked to find that parties had made a mutual mistake in their contract by not including Tract C and to grant adequate equitable relief to prevent an injustice.

■ If equitable relief is to be given, as plaintiff himself has requested, it must be expected that it will be equitable to both sides. It seems to us the trial court has afforded all relief sought by plaintiff except that the damages allowed do not satisfy. We find the judgment of the district court entirely fair and equitable to plaintiff and we see no reason to modify or reverse it.

Regarding the measure of damages, the contract itself states the property contains 15.78 acres, "more or less." There was no guarantee that there would be a full 15.78 acres. The expressed guarantee, as provided in the contract, was that the area contains not less than 15 acres. The parties in that regard specifically agreed, if there were less than 15 acres, "the price is to be adjusted in accordance with the area conveyed."

Such a provision can only mean the price would be adjusted by prorating the purchase price at the contract rate. The court found Tract C contained 0.7 acres and, with such tract excluded, there still remained 14.9 acres to be conveyed. Thus, according to the language of the contract, the shortage under 15 acres, which would be 0.1 acres, would be deducted from the purchase price on the basis of a prorated share of the stated purchase price. That would amount to a deduction of $123.33 from the purchase price.

However, the court allowed not only the deduction of $123.33, it allowed a further deduction for the 0.7 acres contained in Tract C. Plaintiff therefore received an adjustment eight times as large as the contract provided for.

Plaintiff's theory is that the land was bought for and was worth approximately $1,000 per acre at the time of purchase; and that the land had since increased in value so that it was worth five times as much or $5,000 per acre at the time of trial. As far as the number of acres is concerned, plaintiff cannot complain if the adjustment rate contemplated by the contract is followed—especially where he received an adjustment for 0.8 acres instead of for 0.1 acres.

The buyer's principal complaint, however, seems to be that there is damage stemming from the fact that his land is divided so that one tract is cut off from the other by the Government's access strip. The court's finding on this point was that plaintiff failed to prove actual damage of this nature; that the evidence produced was speculative, had insufficient foundation, and was not credible.

Plaintiff suggested he intended to subdivide the land, but there was no evidence to show exactly what damage he would suffer in subdividing because Tract A and Tract B were separated by the Government's Tract C. Both Tracts A and B abut on U. S. Highway 187. We dealt with a contention similar to the one made here by Kipp in State Highway Commission v. Triangle Development Co., Wyo., 369 P.2d 864, 869–870. See also Sheridan Drive-In Theatre, Inc., v. State, Wyo., 384 P.2d 597, 600–601.

If there was indeed a mutual mistake caused by Tract C not being included in the contract when all parties thought it was being included, there would be reason to grant relief to the party injured when en-

forcement of the contract is sought. Barnard v. Cedar Rapids City Cab Co., 257 Iowa 734, 133 N.W.2d 884, 890; Mortensen v. Berzell Investment Company, 102 Ariz. 348, 429 P.2d 945, 947. Beaver v. Estate of Harris, 67 Wash.2d 621, 409 P.2d 143, 146. See also 17 C.J.S. Contracts § 144, p. 894.

However, a relief which equity might very well offer to the buyer in such a situation would be to restore the parties to their original position by voiding the contract and ordering all money paid by the purchaser to be refunded to him, less the rental value of the land during buyer's occupancy of it. See Mortensen v. Berzell Investment Company, 102 Ariz. 348, 429 P.2d 945, 948.

■ As stated in 17 C.J.S. Contracts § 144, p. 895, and in Pepper v. Evanson, 70 Wash.2d 309, 422 P.2d 817, 819, mutual mistake renders a contract merely voidable and not void. In this case Kipp makes it very clear he does not want the contract voided. He is not willing for the contract to be voided because of the increase in the value of the land since the contract was entered into. Having so chosen, he cannot complain if the court follows the language of the contract and refuses to allow a severance damage caused by Tract A and Tract B being separated.

Our conclusion is, regardless of whether plaintiff proved a severance damage resulting from a situation not known to exist at the time of contracting, the court nevertheless arrived at an equitable result and its judgment cannot be said to be inequitable to buyer-Kipp. That is especially true in view of Kipp's election not to have the contract voided. In other words, if plaintiff does not want the contract voided, he cannot complain if it stands as written.

■ In the absence of rescission of a contract because of a mutual mistake, a contract may be regarded as still subsisting and as determining the rights of the parties. Long v. Thompson, 63 Cal.App.2d 834, 148 P.2d 129, 131.

In Dunlap v. Orwig, 199 Okl. 378, 186 P.2d 659, 662, a contract was held to be voidable and not void. The court said parties seeking relief may not both affirm and repudiate the contract. It was held such parties must elect either to rescind or to affirm the contract, and until they so elect, the court said, the contract continues valid.

### Buyer's Default

A payment of $5,000 on the purchase contract was due from buyer September 1, 1966. It became delinquent and sellers served notice of intent to declare a forfeiture, allowing 12 days from service of the notice to make good the default. Instead of paying the past due payment, Kipp brought the instant suit. Sellers counterclaimed with a demand for forfeiture.

The court found Kipp had materially breached his contract by failing to make the $5,000 payment due September 1, 1966; by failing to pay taxes when due; by failing to furnish a correct survey as required by the contract; and by failing to furnish sellers with policies of insurance as required by the contract. Despite the finding of default, the court allowed plaintiff 30 days in which to pay what was due on the contract and thereby keep himself in good standing under the contract.

■ The court's finding of default seems to be supported by ample evidence; but we need not decide wherein buyer was or was not in default. There is no dispute of the fact that plaintiff failed to make the $5,000 payment due September 1, 1966. The fact that the court allowed time for him to make good his default is further reason for us to conclude buyer was not on the whole dealt with inequitably.

### Location of Fence

■ There was evidence tending to show that a fence along the southern boundary of the land sold was not on a true course; and that the fence cut off approximately 0.6 acres of land covered

by the contract. Kipp claims he should be allowed to deduct from the purchase price for this 0.6 acres, since the adjoining owner might claim it by adverse possession.

The court took the position, however, that the adjoining owner was not a party; that no claim of adverse possession was being made; and that the question of whether the adjoining owner could or could not claim title to the 0.6 acres by adverse possession was not before the court. The court was obviously correct in that position.

We find nothing in the judgment of the district court which was inequitable or prejudicial to appellant. Such judgment should therefore be allowed to stand.

Affirmed.