## Lebanon Theatres Corp. v. Northeast Swim Club

*James R. Whitman* of *Lewis, Brubaker, Whitman & Christianson,* for plaintiff.

*Daniel E. Long, Jr.,* for defendant.

GATES, P. J., September 17, 1970.—On August 28, 1970, plaintiffs filed an affidavit that immediate and irreparable damage will result to them before the above matter can be heard. Consequently, we issued a preliminary injunction, enjoining defendant from operating its swimming pool after the hours of sunset and during the nighttime, pending a hearing before us.

A hearing was held on August 31, 1970, at the conclusion of which we invited counsel to file their written requests for findings and conclusions within 10 days.

On September 3, 1970, we entered an order and decree vacating the preliminary injunction and noting that this adjudication would be subsequently filed.

### FINDINGS OF FACT

1. Plaintiff, Lebanon Theatres Corporation, is a duly organized Pennsylvania corporation, having its principal place of business at 1316 Elm Street, Lebanon, Pa.

2. Plaintiffs, John C. Weber and Florence Weber, his wife, are sui juris individuals residing at 1316 Elm Street, Lebanon, Pa., and the owners of premises at North Fifteenth Avenue and East Lehman Street, North Lebanon Township, Lebanon County, Pa.

3. Defendant, Northeast Swim Club, is a nonprofit corporation duly organized under the laws of the Commonwealth of Pennsylvania, which has operated

a swimming pool to the west and slightly to the north of plaintiffs' business since August 22, 1970.

4. Plaintiff, Lebanon Theatres Corporation, has continuously operated a drive-in theatre at North Fifteenth Avenue and East Lehman Streets, as lessee of the premises since July, 1950.

5. The Key Drive-In Theatre is located to the north of Legislative Route 422, and the following business establishments are located in the immediate vicinity:

(a) Mobile Service Station;

(b) Klopp & Cetron Furniture Co.;

(c) Beth Products, a garment factory;

(d) Certain other business establishments which render the nature of the area commercial.

6. The drive-in theatre operates nightly from "dark" for about five hours.

7. The drive-in theatre has a capacity of 650 cars and operates on weekends at 80 percent of capacity.

8. The drive-in movie screen is located on the west end of plaintiffs' premises, and the patrons park at speaker poles which fan out therefrom in an easterly direction.

9. The drive-in movie requires darkness to operate its business.

10. Defendant, Northeast Swim Club, is a private club serving a limited membership of about 226 families.

11. Defendant's pool is located about 1,000 feet northwest of plaintiffs' premises.

12. Lights from defendant's pool glare and shine directly toward the premises of plaintiffs, although no light from defendant's property is projected onto plaintiffs' property.

13. Prior to the time when defendant began construction of its pool facility, it was contacted by the president of plaintiff corporation and made aware

of the impact that its lights could have upon plaintiffs' operation.

14. Since the lights have been turned on, patrons have complained to plaintiff corporation or its agents concerning the distracting lights.

15. The lights render a portion of the premises of plaintiffs unsuitable for viewing motion pictures while the pool is lighted.

16. Defendant's pool is located at an elevation higher than plaintiffs' premises.

17. The bylaws of the Northeast Swim Club provide for the operation of the swimming facilities until 9 p.m.

18. Many of the members of the Northeast Swim Club are working people and, during the week, have the opportunity of using the facilities only during the evening hours.

19. The lighting facilities in the swimming pool itself are as follows:

(a) 8 underwater 500-watt Stonco lights recessed in the walls of the swimming pool;

(b) 1 25-foot standard supporting 2 500-watt quartz Stonco lights facing north and situate south of the pool;

(c) 1 25-foot standard north of the pool with 1 500-watt quartz Stonco lamp;

(d) 1 25-foot standard along the east property to the north of the pool with 2 500-watt quartz Stonco lamps;

(e) 8 100-watt recessed lights with shields situate on the outside of the bathhouse, as follows:

(1) 1 on east end of bathhouse;

(2) 4 across front of bathhouse (south side);

(3) 3 on west end of bathhouse;

(f) interior lights from the concession stand which light is emitted when the concession stand is operated.

20. On or about August 18, 1970, one of the plaintiffs, John C. Weber, complained to Paul Rauch of the light located at the north end of the pool in front of the bathhouse, saying that it cast a beam and was particularly objectionable to the operation of plaintiffs' business. As a result of said complaint, the Northeast Swim Club discontinued the use of said light.

21. The Key Drive-In Theatre business operation is a business which is extra sensitive to light, that is to say, it is more directly affected by light than that of an ordinary business operation.

22. The lights from the Northeast Swim Club do not cast beams into the cars of the patrons, but the light emitted from the premises of the Northeast Swim Club appeared as a "halo effect" such as one might see when approaching a city from a distance.

## DISCUSSION

The operative facts in this case are not seriously in dispute. At the trial, evidence to the following effect was introduced. Plaintiffs, for all practical purposes, are the owners of the Key Drive-In Theatre located in North Lebanon Township, east of the City of Lebanon, in an area concededly commercial in nature, although North Lebanon Township has no zoning ordinance. The Key Drive-In has been in operation since 1950.

The photographs and evidence disclose that the drive-in theatre has no walls, fences, wings or shadow boxes to exclude light from the surrounding properties. Furthermore, it was conclusively established by the evidence and testimony that the operation of a drive-in theatre is extremely delicate with respect to light in any form, as it may affect the projection of motion pictures on the screen and as it may detract the attention of viewers of the movie.

On August 22, 1970, defendant, a nonprofit corporation organized for the purpose of building and operating a family-type swimming pool, commenced its operations. Defendant constructed its pool in such a manner as to enable its members to swim in the evening hours for the purpose of accommodating members who worked during the daytime and who would otherwise be excluded from the activity. Necessarily, this involved the inclusion of underwater lights and the erection of spotlights to light the pool area. In addition, there are lights in the refreshment stand and lights in the bathhouse. Defendant's property is located to the north and to the west of plaintiffs' property at a distance of approximately 1,000 feet.

Plaintiffs' evidence supports the finding that because of the position of the screen in relationship to defendant's pool, some of the patrons in the northern part of the drive-in theatre are distracted from viewing the movie on the screen by the existence of the lights eminating from the pool area. It is conceded that no beams of light are projected from defendant's property onto plaintiffs'. The complaint merely is that these lights distract the viewer and that as a result of what plaintiff characterizes in its complaint as "a continuing trespass or nuisance," plaintiffs contend that they will sustain a loss of business and irreparable damage. There is no contention, nor is there any evidence, that these lights are of such an intensity that they interfere with the projection of the movie onto the screen. As a matter of fact, the evidence is that at other portions of the drive-in property a viewer is not distracted and, indeed, cannot even see the lights from defendant's property.

Initially, we note that we must reject the contention of plaintiffs that the facts in this case constitute a continuing trespass. While the dividing line be-

tween trespass and nuisance is not always a sharp one, we think it is clear that the case at bar is governed by the law of nuisance, not by the law of trespass. In fact, cases of this type are described in the Restatement of the Law as "nontrespassory invasions": Restatement of the Law of Torts, Vol. 4, Chap. 40, p. 214, et seq. We will not burden readers of this opinion with detailed analyses of what this case is not about but prefer to devote the time and space to what we believe it to be. Anyone interested in a learned analysis of why this type of case is not one of trespass but of private nuisance may do so by reading Amphitheaters, Inc. v. Portland Meadows, 184 Or. 336, 198 P. 2d 847.

We are of the further opinion that this is not even the type of case exemplified by the Amphitheater case where the complaint is the casting of light upon the premises of plaintiff by defendant, because the evidence discloses that such was not the case. Indeed, no light was cast upon the premises of plaintiffs, and the complaint merely is that the light, because of its location with respect to the screen and because of the size of the haloing effect of the lighted water, distracts viewers and, therefore, constitutes irreparable damage to plaintiffs. We are of the opinion, therefore, that the rationale of the type of case in which light is shed upon the property of plaintiffs applies with considerably more force in the instant case.

We first observe that plaintiffs' use of their land is delicate in nature and is extremely sensitive to light. On the other hand, defendant's use of its property is legal and quite rational. A number of families will be using this swimming pool at night, and it is wise that the pool area be well lighted so as to avoid accidents and possible drownings. We do not believe that defendant's use of its land as a swimming pool with the lights would in any way interfere with the ordinary

occupation of land in this commercial area of North Lebanon Township. The injury complained of by these plaintiffs occurs solely because of the delicate nature of the use to which plaintiffs put their property. We do not believe that plaintiffs can or should be permitted to increase the liabilities or limit the use of their neighbor's land by applying on the neighbor's property a special use, whether that use is for business or for pleasure.

Merely because plaintiffs have been conducting their activity prior in time to the activity of defendant, of course, is no help to them. If it were otherwise, the practical effect would be to zone the panorama behind and to the side of the screen from distracting lights by the peculiar use to which plaintiffs put their property. This certainly cannot be the law nor should it be.

Defendant's use is not of itself noxious or unreasonable. So, we do not believe its character is changed so as to constitute it a private nuisance, merely because it does harm to some particular activity of a delicate nature being conducted on nearby property where it does not affect any ordinary business or activity, nor does it interfere with the ordinary enjoyment of life on the land in the area by others.

In conclusion, we are of the opinion that a man who carries on an exceptionally delicate trade or business cannot complain because he is injured by his neighbor doing something lawful on his property, if it is something which would not injure an ordinary trade or anything but an exceptionally delicate one. See Joyce, Law of Nuisance, §26; to the same effect, Prosser on Torts, p. 614, et seq. See also 39 Am. Jur. p. 424, §155; Sheridan Drive-In Theatre, Inc. v. State of Wyoming, 384 P. 2d 597; Belmar Drive-In Th. Co. v. Illinois State Toll Hy. Comm., 34 Ill. 2d 544, 216 N.E. 2d 788; Fontanella v. Leonetti, 33 D. & C. 2d 73.

## CONCLUSIONS OF LAW

1. Defendant's use of its land for a lighted swimming pool operation in an unzoned residential area, where other land in and about the vicinity of Route 422 is used for commercial and industrial purposes, is not unreasonable.

2. Defendant's use of lights as that use is found to exist in this case does not constitute a private nuisance.

3. The invasion of light from the premises of the Northeast Swim Club to the premises of the Key Drive-In Theatre is not substantial.

4. The actions of the Northeast Swim Club in illuminating its premises were not negligent, reckless or ultrahazardous.

5. Plaintiffs failed to establish an equitable cause of action entitling them to injunctive relief.

## DECREE

And now, to wit, September 17, 1970, the order dated September 2, 1970, as follows, is hereby reaffirmed:

"And now, to wit, September 2, 1970, the preliminary injunction issued August 28, 1970, is hereby vacated and dissolved. The sureties are discharged from their obligation on the bond. An adjudication will be filed in due course. Each party shall pay own costs."