[Civil No. 4322. Filed October 15, 1941.]

[118 Pac. (2d) 67.]

CALIFORNIA STEEL PRODUCTS COMPANY, a Corporation, Appellant, v. PERRY A. P. WADLOW, Doing Business Under the Name of PIERCE CLEANERS, and ALICE CLARICE WADLOW (Assignee), Appellees.

Mr. A. Y. Moore, for Appellant.

Mr. Greg Garcia, for Appellees.

ROSS, J.—On or about May 12, 1937, one A. F. McKinney, doing business under the name of Mc-Kinney Systems, in San Francisco, California, sold to Perry A. P. Wadlow, doing business under the name of Pierce Cleaners, in Phoenix, Arizona, "One #103–A McKinney Synthetic Solvent Dry Cleaning Unit Complete and Polished," for the sum of $4,195, upon a conditional sales contract, part of the purchase price being paid down and the balance to be paid in monthly installments of $93.25, beginning August 10, 1937, until the whole thereof was paid and, in case any installment was not made when due, said McKinney was authorized to retake the property from the defendant.

Shortly afterward McKinney sold and assigned his interest in the conditional sales contract to the California Steel Products Company, plaintiff herein.

The defendant being in default in four monthly installments, on March 3, 1938, plaintiff instituted this action, after, as it alleges, demanding possession of the cleaning unit or in lieu thereof damages in the sum of $4,195, but did not at that time sue out a writ of replevin. Later it caused a writ of replevin to be issued and levied on the cleaning unit and thereafter sold it to itself for $1,500, which sum, less costs of sale, it credited on the purchase price.

In his answer defendant admitted the making of the contract to purchase such cleaning unit at the price named; alleged payments thereon in the sum of $350 cash, $1,000 paid-in value of his Bower cleaning unit, and three monthly installments, amounting to $279.75; admitted the cleaning unit was delivered to him, but alleged that plaintiff and its assignor, McKinney, before and at the time of the execution of the contract represented to him that such cleaning unit was complete, new and polished; that it would clear sixty pounds of clothing in a period of thirty minutes; that it was to be constructed of new material, and that it had never been used; that the defendant relied upon such representations and believed them to be true, whereas in fact they were untrue and made with the design and intent to defraud and cheat him; that as soon as he discovered that he had been defrauded, to wit, on or about November 10, 1937, he ceased to make monthly payments, offered to return the cleaning unit to plaintiff, and demanded of plaintiff that it return to him his property and all payments made, in the sum of $1,629.75, but that plaintiff refused to accept such offer.

In a cross-complaint defendant re-asserts the fraud allegations of his answer and alleges that on or about the first part of November, 1937, he discovered the cleaning unit was second-hand; that many of its parts

were worn out and that it was not able to perform as represented; that on or about November 26, 1937, A. F. McKinney (the seller) admitted the cleaning unit delivered to defendant was not the unit called for in the written contract but that the same was a used unit. He alleges he was ready and willing, and so advised plaintiff, to carry out his contract if plaintiff would perform its part thereof by delivering the cleaning unit contracted for; that he did offer to return the cleaning unit to plaintiff and did demand the return of his property and the money paid by him on the contract, but that plaintiff would not accept the offer; that he paid out, or was obligated to pay out, for repairs and adjustments of the cleaning unit, with the knowledge and consent of plaintiff, $791.75, and that he was otherwise damaged, because the unit would not do the work represented, in the sum of $1,500. He alleges other damages but it is not necessary to state them here since the court took them from the jury and no assignment is made on the court's ruling. He prays for the return of his advances, the money paid to repair the unit, and for general and special damages.

The case was tried to a jury and resulted in a verdict in favor of defendant in the sum of $1,750. From the judgment entered thereon and the order denying its motion for a new trial, plaintiff has appealed.

The defendant's evidence is to the effect that as soon as he discovered that the cleaning unit was a used one and would not do the work represented, he told plaintiff to take it, that he did not want it, that he wanted a new unit; that, pending negotiations, plaintiff's agent told defendant "to keep it and go ahead and use it." The effort to adjust the matter continued until February 3, 1938, on which date one of plaintiff's agents called defendant over the telephone from San Francisco and asked him "what he would

settle for,'' and defendant told him he did not want a settlement but that he ''wanted his unit.'' In that conversation (according to the agent)

''He (defendant) told us to come, that he couldn't use it, he couldn't get all of his cleaning out with it, couldn't clean a full load with it, it was leaking.

''Q. Did he say anything about losses?

''A. Yes, he said it was still leaking and he had had a lot of work done on it, and he says, 'Come and get the unit and deliver his unit and he would be happy.' . . . ''

The plaintiff's agent also said of this conversation:

''Well, he told me he didn't want the machine. I told him to go ahead and use it, eliminate any expense there, because he had to have his cleaning done somewhere, and he was—I told him to go ahead and use it, eliminate any expense, that he naturally had to have his cleaning done, and they didn't have a machine to deliver, and they was arguing about it there, and I told him to use it until such time that we could get it straightened out.''

This seems to have been the last effort to settle their differences. There is no question but that the cleaning unit was a second-hand one or that a large part of it was. It is not disputed that it functioned poorly and unsatisfactorily, was inadequate for defendant's needs, and did not fulfill the contract.

██ The first and second assignments make the point that defendant's cross-complaint states facts from which it is impossible to determine whether the defendant desired to rescind the contract and ask for a return of what he had paid thereon, or to affirm it and ask for damages for the deceit and fraud. If the pleading is susceptible of such a construction, plaintiff's motion to require defendant to elect which remedy he wished to follow should have been granted. We quote the rule as it was stated in *Yancy* v. *Jeffreys,* 39 Ariz. 563, 8 Pac. (2d) 774, 775:

" . . . This transaction presents a purchase and sale. The general rule of law is that, in case the terms of the sale are breached by the seller, the buyer has several remedies among which he may choose. He may either (a) affirm the sale, notwithstanding the breach, and carry out his part of the agreement; (b) rescind the sale, returning the property and recovering anything already paid on the purchase price; (c) affirm the sale, and, if he has been damaged by the breach of the contract by the seller, set off the amount of damage on a suit by the seller for the balance of the purchase price; or (d) sue the seller for damages. 55 C. J. 1072. He must, however, elect between these remedies, and is bound by his election. If he retains the property, he cannot refuse to carry out his part of the agreement, although he may recover the damages caused him by the breach on the part of the seller. *Blackford* v. *Neaves*, 23 Ariz. 501, 205 Pac. 587; section 2882, Rev. Code 1928."

When a buyer seeks to rescind the contract, the measure of his damages is different from the measure of damages when he affirms the contract. In the former case he must return, or offer to return, the goods to the seller and, upon doing so, he is entitled to recover the price, or the part thereof which has been paid. In the latter case, he may await the seller's action for the price of the goods and set up against such action the breach of warranty by way of recoupment in diminution or extinction of the price, or he may maintain an action against the seller for damages. The sales statute provides that when a buyer has claimed and been granted a remedy in any one of these ways, no other remedy can thereafter be granted. Section 52–578, Arizona Code 1939. Because the measure of damages is different in rescission and affirmance, it is essential for the pleader to indicate in advance which remedy he elects and relies upon, thereby advising his adversary and the court the rule of damages he will invoke.

■ Do the answer and cross-complaint show which remedy was relied upon? We think not. True, the defendant and cross-complainant pleads his offer to return the cleaning unit and a demand upon the seller to repay him what he has paid on the price, and if he had stopped there it would be plain that he had elected to rescind. But he files a cross-complaint setting up damages in diminution or extinction of the price. This is an affirmance of the contract, which means in law that he has elected to keep the cleaning unit and offset any damage he has suffered, by reason of the fraud he alleges was practiced on him, against the price. These remedies are inconsistent. The remedy based on the theory of affirmance of a contract or other transaction is inconsistent with the remedy arising out of the same facts and based upon a rescission. 20 C. J. 14, sec. 10.

While the court refused to grant the motion to require an election of remedies, it later in the instructions to the jury, in effect, on its own motion, made the remedy of rescission the exclusive remedy. The court told the jury that it should not consider the claims for damages to cross-complainant's business as there was a failure of proof in that regard and, in that connection, said:

" . . . So he (defendant and cross-complainant) really then is asking for $1,000 for the machine, $300 that he paid on the contract, and he is asking for $791.75 which he says he expended in the repair of the machine which he received. Now that, in substance, is the cross-complaint of the defendant."

And we may add that the defendant's answer was to the same general effect.

■■ The court instructed the jury that, if defendant proved the fraud as alleged by a clear and convincing preponderance of the evidence, he had proved a legitimate defense and that plaintiff was not

entitled to recover. This instruction is claimed to be erroneous because, it is said, proof of fraud in the circumstances should not prevent a recovery but only diminish the amount of damages. This might be true if the case had not been submitted to the jury on the theory of rescission. In rescission for fraud, or breach of warranty, or for any other cause, the seller is entitled to the return of his property and the buyer to any payments made thereon. If the remedy had been one of affirmance, the instruction, to be correct, should have recognized the right of the plaintiff to recover the balance of the price and the right of recoupment of damages by way of diminution or extinction by defendant. The instruction was proper under the facts.

 Two forms of verdict were submitted to the jury on the theory that, if plaintiff was entitled to recover, the amount of its recovery should be the full unpaid balance of the purchase price. In other words, if defendant failed to establish the fraud alleged, he had made out no defense and plaintiff should recover, but if defendant's evidence was clear and convincing that the plaintiff had committed the fraud alleged, then the verdict should be for defendant. Complaint is made of this instruction, but we cannot see wherein it is wrong in view of the facts. The plaintiff got back its cleaning unit and that is all it was entitled to, if the jury believed the defendant's evidence.

We have carefully examined all of plaintiff's assignments of error and are satisfied that if any error was committed it was not prejudicial to plaintiff's rights.

The judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.