390 P.2d 576

**Ramona Beck MAHURIN, Appellant,**

**v.**

**George M. SCHMECK, Appellee.**

**No. 7132.**

Supreme Court of Arizona,

In Division.

March 20, 1964.

---

Hash & Hash and Arthur C. Navarro (deceased), Phoenix, for appellant.

Shimmel, Hill, Kleindienst & Bishop, and Donald D. Meyers, Phoenix, for appellee.

JENNINGS, Justice.

Plaintiff-appellee sued to rescind a sale and lease agreement which he had entered into with defendant-appellant. The complaint also contained a prayer for restitution of the amounts paid pursuant to the agreement, compensation for operation of the business, damages in addition to other losses sustained by appellee in the operation of the business, costs, and for such other and further relief as to the court seemed just and proper. The lower court, sitting without a jury, ordered rescission, and awarded a return of the down payment, advance rental payment, and the further sum of $899.71. Appellant's motion for a new trial was denied. From the judgment and from the order denying her motion, appellant brings this appeal. Appellee and appellant were buyer and seller respectively.

On or about December 15, 1957, appellee responded to a newspaper advertisement wherein appellant had advertised for sale the Colonial Portrait Studio, located at 1132 North Central Avenue, Phoenix, Arizona. Appellee commenced negotiations with Mr. Richard Inman of the Ed Post Realty Company, appellant's agent for the sale in question. He learned that for approximately two years previously, appellant had not run the studio for reasons of ill-health, but that her sister, Mrs. Jean Joyce, together with a Mr. John Pilch, had been operating such. During the course of the negotiations with Inman and appellant, appellee was never advised that Mrs. Joyce made any claim to any part of the business.

On January 29th, 1958, the parties executed an agreement for the purchase and sale of the studio. On the same day and

in connection with said sale, they executed a lease agreement pertaining to the real property and improvements upon which the business had been operated. Appellee, as of this date, had paid $5,500 down. He also paid $225 rent upon the execution of the lease.

■ Prior to this date, Mrs. Joyce and Pilch had conferred with appellant's attorney concerning their claimed interest in some of the studio property. They were advised to prepare an inventory of items which they claimed so that they would not pass to the prospective buyer in the forthcoming sale. Although the record is conflicting on the matter, appellee maintains he never saw this inventory sheet, and that he never knew of this adverse claim in the property prior to the time he took possession of the studio. It was the duty of the trial court to reconcile the conflicts in the testimony as best he could, and we have uniformly refused to disturb that tribunal's decision when it was a question of the weight of the testimony or the credibility of the witnesses. Hyder v. Barton Hat Co., 29 Ariz. 380, 241 P. 959.

Appellee was to have taken possession on January 31st, but he was not allowed to do so at that time because appellant indicated she was having some difficulties with Mrs. Joyce. On February 1st, when possession was given, appellee found that several items were missing, to wit: engage-ment listings, customers' records, darkroom supplies, photographic materials, and mounts. Appellant told appellee not to worry about these missing items but that she would take care of the whole matter. The business was closed on Sunday, February 2nd. On the 3rd, appellee discovered that other items were missing, namely, the accounts receivable and payable records, and some negatives. Again, appellant said not to worry about anything.

During the week between February 3rd and February 10th, appellee learned of some of Mrs. Joyce's activities which directly affected the operations of the business. Mrs. Joyce had removed the negative file for the last eighteen months to two years, the stock of frames she thought were hers, and all of the customer records. She was also in the process of entering the same business herself within two blocks from the studio.

In the process of opening her own studio, Mrs. Joyce had told Colonial customers that she was leaving the studio, going into business for herself, and that she would appreciate it if they would bring their business to her. She went in business in mid-February. Paragraph 4 of the sales agreement provided as follows:

"The seller agrees that she will not for a period of two years from the date of this agreement directly or indirectly engage in a like business within a

radius of 50 miles from the location of the aforesaid business."

Mrs. Joyce testified that approximately fifty customers left the studio and commenced to patronize her business. Appellee never saw the accounts receivable records nor did he ever receive any payments thereon. Pilch, when he went to work on February 1st, knew that the negative file was missing, and that it was in Mrs. Joyce's possession. The holder of this file does the repeat orders on the negatives therein. Pilch also testified that after Mrs. Joyce left, there was a change in the volume of business, as to leave it practically nil.

All of the above-mentioned items induced appellee to write to appellant's attorney. The letter, dated February 11th, stated in effect, that if matters were not cleared up promptly, he would be forced to cancel. Not receiving any reply thereto, appellee, on February 18th, contacted an attorney. The attorney wrote the following letter to appellant:

"* * *

"Please be advised that Mr. Schmeck constitutes the foregoing failures on your part to be a breach of contract.

"It is also apparent that by virtue of the matters hereinbefore set forth, it will be impossible for you to perform under the contract.

"This letter, therefore, is intended to be notice to you that Mr. Schmeck *hereby rescinds the contract* in full and demands that you pay to him damages that he has sustained as a result of your breach. In order that every possible means can be employed to safeguard and protect the business and property in the possession of Mr. Schmeck, and in order to mitigate any losses to you, Mr. Schmeck will retain possession of the business for your account until you demand repossession thereof and return to Mr. Schmeck the moneys which he has paid upon his contract.

"Please do not hesitate to contact me or to have your attorney, Miss Virginia Hash, to whom I am sending a copy of this letter, contact me in order that the details concerning this matter can be worked out with the least amount of expense and inconvenience to all parties.

"Very truly yours,"

(Emphasis ours.)

Appellant did not know what the letter meant and instructed her attorney to take care of the whole situation.

After February 18th, appellee operated the business for the account of appellant until May 1st, 1958, at which time he surrendered the premises. No request to take back possession was made until the latter part of April. Appellee remained in possession during the interim on the advice of

his attorney, and used every effort and diligence on his part in connection with the efficient operation of the business.

■■ Appellant contends that the judgment of the lower court was contrary to law, and not supported by the evidence. Rescission, whether the object of a suit in equity, or forming the basis of a rescission at law, is governed by equitable principles. Bostwick v. Mutual Life Ins. Co., 116 Wis. 392, 92 N.W. 246, 67 L.R.A. 705. Appellant maintains that appellee knew of the circumstances that might prevent him from getting complete control of the studio; that he was advised he could back out because of the difficulties which had arisen with Mrs. Joyce but that he chose to enter into possession anyway; that therefore, he should be held to the benefit of his bargain. As referred to supra, there was much conflicting testimony regarding appellee's prior knowledge. Appellee testified that, prior to taking possession, he never saw the inventory prepared by Mrs. Joyce and Pilch, and that he did not know of their adverse claim. The lower court was the judge of the witnesses' credibility.

■ It is the law that a court of equity cannot undertake to set aside the deliberate contracts or obligations of parties, fairly and freely assumed, because time may show that the obligation was onerous or unprofitable, except under special circumstances recognized by the authorities. Parsons v. Smilie, 97 Cal. 647, 32 P. 702. We have here special circumstances warranting the invocation of equitable relief. Where there is an entire, or even a substantial failure of consideration, a contract may be rescinded. Fish v. Valley Nat. Bank of Phoenix, 64 Ariz. 164, 167 P.2d 107. In the instant case, the agreement provided:

"The seller hereby sells to the buyer all her right, title and interest in the business of Colonial Portrait Studio, including the Good Will thereof, as a going concern; the stock in trade, fixtures, effects, book accounts and debts now due and owing to the seller on account or in respect of her business, and also all contracts, accounts receivable, engagements, benefits and advantages which have been entered into by the Seller, or to which she is or can be entitled on account of or in respect of the said business * * *."

After more than one-third of the purchase price had been paid, it became apparent that, due to the actions of Mrs. Joyce, the good will of the business as a going concern had been substantially impaired. Pilch testified to the effect that the business dwindled to practically nothing after she left, and this despite consistent effort on appellee's part. He also stated that

he was always under the impression that the studio was Mrs. Joyce. As previously mentioned, approximately fifty customers left the studio to patronize Mrs. Joyce.

Furthermore, appellant failed to perform by not delivering the accounts receivable, a substantial amount of the stock in trade, certain fixtures and effects, the negative files, customers' records and lists of engagements. Appellant testified that, in her opinion, all of the properties which she knew had been taken by February 20th had an estimated value at that time of $10,000, approximately two-thirds the value of the entire contract. This, coupled with the loss of good will and customers, constituted such a substantial breach as to warrant rescission.

The next question raised is whether appellee made his election to rescind seasonably. A contract of sale must be rescinded within a reasonable time under the existing circumstances. L. & N. Sales Company v. Stuski, 188 Pa.Super. 117, 146 A.2d 154. What is a reasonable time is a question of fact for the trier of fact unless the facts are such that only one inference could be derived therefrom in which case it would become a question of law. Tinius Olsen Testing Mach. Co. v. Wolf Company, 297 Pa. 153, 146 A. 541, 72 A.L.R. 718. After taking possession on February 1st, appellee learned that many items were missing. He wrote appellant's attorney on February 11th stating that something would have to be done or he would proceed to cancel out the contract. Not receiving any response thereto, he hired an attorney who wrote the purported letter of rescission on February 18th. Appellee acted within a reasonable time under the existing circumstances.

Appellant next contends that appellee's notice of rescission was ambiguous and therefore ineffective. A notice of rescission must be clear and unambiguous, conveying the unquestionable purpose to terminate the contract; and where, from the conduct of the one having the right to rescind, it is not clear whether he has rescinded the contract, he will be deemed not to have done so. Ibid. This contention is without merit. Appellee, in the letter of February 11th, stated that he would be forced to cancel unless something were done about the matter. The February 18th letter expressly stated "Mr. Schmeck hereby rescinds the contract in full." Subsequently, the attorneys for both parties conferred with each other relative to the rents and payments. Appellee's attorney indicated at that time that, consistent with the act of attempted rescission, they would not make any further payments of any kind under either the contract or the lease and that the seller could have possession any time. This definitely evinced an unequivocal intent to rescind.

It is assigned as error that appellee attempted a rescission with strings attached, namely, that the election to rescind was conditioned that appellant demand repossession and restore appellee to the *status quo ante;* that appellee made no return or unconditional offer to return the business as was required; and that this therefore constituted an inconsistent course of conduct tantamount to no rescission at all. We disagree.

An actual surrender of the property by the vendee seeking rescission is not a prerequisite to a suit if he has offered to restore the property to the vendor. Kent v. Clark, 20 Cal.2d 779, 128 P.2d 868, 142 A.L.R. 576, and the offer to surrender possession of property received under the contract need not be unqualified, but may be made conditional upon the vendor's restitution of amounts paid on the contract, less proper allowances in respect of vendee's use of the premises. Ibid. See annotation, 142 A.L.R. 582.

The important question to be decided is whether appellee's letter of rescission can be construed as an *offer to restore* conditioned upon restitution of the purchase money within the Kent v. Clark rule. At this juncture, we will review the language contained in the letter:

" * * * Mr. Schmeck hereby rescinds the contract in full and demands that you pay to him the full amount that he has paid heretofore on the contract, * * *. In order that every possible means can be employed to safeguard and protect the business and property in the possession of Mr. Schmeck, and in order to mitigate any loss to you, Mr. Schmeck will retain possession of the business for your account until you demand repossession thereof and return to Mr. Schmeck the moneys which he has paid upon his contract."

We hold that the above statement can be so construed. The fact that there was no outright offer of possession, but rather a requirement that appellant demand repossession, does not, under the circumstances, render the letter any the less an offer to return the premises upon the condition stated. Although the wording used is not to be recommended, it was sufficient to convey the proper intent. It would be more desirable to place in a notice of rescission an outright offer to restore possession upon compliance with certain conditions.

It was proper for appellee to remain in possession of the going business and do all possible to conduct it in an efficient manner so as to mitigate any loss to appellant. Widmer v. Leffelman, 187 Or.

476, 212 P.2d 737; Clark v. Wells, 127 Minn. 353, 149 N.W. 547, L.R.A.1916F, 476. Although in these cases, there was an unconditional offer to restore and a *refusal* to accept the return of such property, we deem these insignificant factors in view of the above-cited rule that the offer to restore may be conditioned upon the restoration of the vendee to the *status quo ante*.

 Appellant urges the lower court awarded damages besides granting the rescission prayed for and that this was improper. A court cannot decree rescission and award damages concomitant thereto. California Steel Prod. Co. v. Wadlow, 58 Ariz. 69, 118 P.2d 67; Yancy v. Jeffreys, 39 Ariz. 563, 8 P.2d 774. There is no question but what the lower court, when it decrees rescission, can order the return to the vendee of any consideration parted with pursuant to the contract. California Steel Prod. Co. v. Wadlow, supra. In the instant case, appellee was rightfully awarded the return of the down payment, and the advance rental payment plus interest thereon at the rate of six per cent per annum from February 18th, 1958, until paid. But from this sum must be deducted the reasonable rental value of the premises from February 1st to February 18th, Kent v. Clark, supra, and upon remand, the trial court is directed to determine this value.

But what about the additional sum of $899.71 which the lower court awarded. Appellant maintains this constituted damages and was therefore improper. It is impossible to determine from the record exactly how the court arrived at this figure. As stated supra, appellee may not recover damages. Nevertheless, whether appellee was, apart from the payments made pursuant to the contract, entitled to any other sum is to be determined upon remand in accordance with the principles hereinafter enumerated.

 Accordingly, the lower court is further directed to hear evidence and make determinations with respect to the following matters. Appellee must account to appellant for all of the profits which he made during the time he operated the studio on her account, namely, from the date of rescission, February 18th, until the date he returned possession, May 1st, 1958. Widmer v. Leffelman, supra. In determining the profits, appellee is entitled to a credit for the amount of the necessary expenses incurred in operating the studio between these same two dates. Ibid. If, upon the accounting, it should develop that a profit resulted, then appellee would be entitled to receive a reasonable compensation for his services rendered from the date of rescission, ibid., but this, in an amount not to exceed the

profit realized. Widmer v. Leffelman, 196 Or. 401, 249 P.2d 476. If a loss was sustained, then appellee would not be entitled to receive any compensation. Ibid. Also, in the absence of any profits, appellant would not be entitled to credit the amount of the loss sustained against the amount which the lower court finds she is required to return to appellee. Ibid.

Furthermore, appellee is entitled to recover his costs of the first trial together with interest thereon at the rate of six per cent per annum from January 26th, 1960, the date of the lower court's decree, until paid.

There was much conflicting evidence in this case. Where, as in the instant case, there is any reasonable testimony supporting the verdict or the judgment of the lower court, we will not disturb such because there is a conflict in the evidence. Arizona Cotton Oil Co. v. Thompson, 30 Ariz. 204, 245 P. 673.

The decree appealed from is affirmed and the cause remanded for further proceedings not inconsistent with this opinion.

UDALL, C. J., and STRUCKMEYER, J., concurring.