873 P.2d 646

Thomas R. WADDELL, an unmarried man dealing with his sole and separate property; Amtitle Trust Company as Trustee of Trust No. 6387, Thomas R. Waddell, beneficiary, Plaintiffs–Appellees,

v.

The ARIZONA STATE LAND DEPARTMENT and M.J. Hassell, Arizona State Land Commissioner, Defendants–Appellants.

Thomas R. WADDELL, an unmarried man dealing with his sole and separate property; Amtitle Trust Company as Trustee of Trust No. 6387, Thomas R. Waddell, beneficiary, ·Plaintiffs–Appellants, Cross–Appellees,

v.

The ARIZONA STATE LAND DEPARTMENT and M.J. Hassell, Arizona State Land Commissioner, Defendants–Appellees, Cross–Appellants.

Nos. 1 CA–CV 91–0452, 1 CA–CV 91–0460.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 26, 1993.

Review and Cross-Petition for Review Granted May 17, 1994.

---

Lewis and Roca by Tom Galbraith, Thomas Klinkel and Janet Napolitano, Phoenix, for plaintiffs-appellees.

Grant Woods, Atty. Gen. by Theresa M. Craig, and Patricia J. Boland, Asst. Attys. Gen., Phoenix, for defendants-appellants.

## OPINION

JACOBSON, Judge.

The central issue in these appeals is whether a 1985 sale of state school trust property[1] is void because the constitutional and statutory limitations on the number of acres of agricultural trust property that can be sold to a single purchaser were exceeded by that sale.

The parties agree that there are no disputed issues of material fact. This court, therefore, reviews the issues in these cases as

issues of law. *Havasu Heights Ranch & Dev. Corp. v. State Land Dep't,* 158 Ariz. 552, 555, 764 P.2d 37, 40, *amended on reconsideration,* 173 Ariz. 159, 840 P.2d 1024 (App. 1988). The property that is the subject of this dispute was acquired by the Arizona State Land Department as the result of an exchange of school trust property and consists of approximately 618 acres of land located near the prison complex near Perryville, Arizona (hereafter, the "property"). The parties agree that the property acquired the status of school trust property and, because of former A.R.S. § 37–604(C)(10),[2] also acquired a commercial classification because the land for which it was traded had a commercial classification.

Following the exchange, the Land Department leased the property to the Department of Corrections for the purpose of a correctional training facility. The Department of Corrections then subleased the land for an agricultural use.

Although the purpose of the exchange was to acquire property for the Perryville Prison, the legislature in 1980 directed the Land Department to sell the land it had acquired in excess of that needed for the prison. *See* 1980 Ariz.Sess.Laws, ch. 23 at 26–29. Based on this legislative directive, the Land Department issued notice of a public auction sale of the property in April 1985. Prior to the sale, the Land Department had appraised the property at $4741 per acre and had determined that the highest and best use of the land was "investment with an interim agricultural use."

Three bidders appeared at the auction; as a result of fifteen separate bids, the property sold for $7200 per acre. Appellant Waddell[3] was the successful bidder.

---

1. "School trust property" is land granted by the federal government to Arizona at the time of its admission to the United States. Its disposition is controlled by the Arizona–New Mexico Enabling Act, Act of June 20, 1910, Pub.L. No. 219 (ch. 310), 36 Stat. 557 (Enabling Act). *See Fain Land & Cattle Co. v. Hassell,* 163 Ariz. 587, 790 P.2d 242 (1990).

2. Former A.R.S. § 37–604(C)(10), now codified at A.R.S. § 37–604(D), provided: "Lands conveyed to the state under this article shall, upon

acceptance of title and recording, be dedicated to the same purpose and administered under the same laws to which the lands conveyed were subject, but may be reclassified as provided in § 37–212."

3. The property was purchased in the name of appellant Amtitle Trust Company Trust No. 6387, whose sole beneficiary is appellant Thomas R. Waddell. For purposes of this appeal, appellants will be referred to collectively as "Waddell."

Evidence was presented to the trial court that, based on a 5% return on investment if the land was used for agricultural purposes, the most the property could have sold for as agricultural land was $2100 per acre. An agricultural appraiser stated by way of affidavit:

> The price that was paid cannot be justified by the income to be anticipated from agricultural operations on the property. The additional value is the result of land investment.

At the time of the auction, Waddell knew the property was actually used for agricultural purposes pursuant to the agricultural subleases, and he farmed the property following his purchase of the property. In addition, Waddell was aware, prior to his purchase, that the Land Department was not following the statutory limitations on the sale of agricultural land, but he assumed that the Land Department had made a determination that the sale was proper.

Pursuant to the terms of the certificate of purchase for the 1985 sale, Waddell made a down payment, with the balance to be paid in five yearly installments. Waddell requested and received extensions for the principal payments due in 1988 and 1989. In April 1990, however, Waddell's counsel wrote a letter to Commissioner Hassell of the Land Department, requesting the Commissioner to void the sale on the ground that the sale was made in violation of the Arizona Constitution and statutes. The Commissioner denied Waddell's request, and refused to return the monies Waddell already paid. Waddell requested reconsideration of this decision and an evidentiary hearing. The Commissioner also denied this request. Waddell failed to make the payment due in June 1990, and the Land Department deemed the certificate of purchase forfeited.

This factual background spawned the litigation that is the subject matter of this appeal. Waddell first filed a complaint in Maricopa County Superior Court, cause number CV 90–20689 (hereafter, "administrative review action"), requesting a review of the Commissioner's decision denying his request to void the property sale. This request was made pursuant to the Administrative Review

Act, Title 12, chapter 7, article 6, Arizona Revised Statutes Annotated ("A.R.S."). In its answer and in a separate motion to dismiss, the Land Department claimed the superior court lacked jurisdiction under the administrative review statutes because the actions of the Commissioner did not constitute a "decision."

In response to this objection, Waddell filed a separate complaint for declaratory judgment and injunctive relief, cause number CV 90–31231 (hereafter, "declaratory judgment action"), requesting the court to declare the 1985 sale of the property void for violations of the Arizona Constitution and statutes, and to require the Land Department to reimburse Waddell for all monies paid, plus interest at the legal rate from the date of payment. The declaratory judgment action was transferred to the judge considering the administrative review action, and the two cases were considered together in the superior court. The parties filed cross-motions for summary judgment in both cases.

In her judgment granting Waddell's motion for summary judgment in the administrative review action, the trial judge found that the superior court had jurisdiction over both the administrative review action and the declaratory judgment action, but that primary jurisdiction over the issues in both actions vested in the Land Department, and, therefore, primary jurisdiction was in the administrative appeal. For this reason, the trial judge issued its judgment in the administrative review action and dismissed the declaratory judgment action. Although the trial judge did not resolve the Land Department's counterclaim in the declaratory judgment action for reasonable rental of the property for the years Waddell farmed the property, the judge found no just reason for delay of the entry of judgment for purposes of allowing the appeals in both cases to be considered concurrently. The Land Department appealed from the judgment in the administrative review action, and cross-appealed the findings of fact and conclusions of law contained in the judgment in the declaratory judgment action. Waddell appealed from the judgment in the declaratory judg-

ment action. This court consolidated the appeals.

## PROCEDURAL ISSUES

▪ The Land Department first argues that the Commissioner's letters did not constitute an appealable "decision" because the Land Department had no authority to administratively void the 1985 sale of the property, and, therefore, the trial court had no jurisdiction to grant relief in the administrative review action.

This argument is somewhat academic, for, as Waddell points out, the trial judge, anticipating that the relief requested might not properly be given in the administrative review action, gave the identical alternative relief in its ruling in the declaratory judgment action. However, because our determination of which procedural action was the proper one does have a bearing on the issue of attorneys' fees and who is entitled to collect them, we address that issue on its merits.

The trial judge correctly determined that primary jurisdiction over the issues raised in these actions lies in the appeal from the Commissioner's denial of Waddell's request that the 1985 sale be declared void (the administrative review action). In *City of Sierra Vista v. Babbitt*, 129 Ariz. 524, 633 P.2d 333 (1981), the Arizona Supreme Court expressly held that a claim for reimbursement pursuant to A.R.S. § 37–249 for payments and improvements made on a void purchase of school trust land must first be considered by the Arizona State Land Department. *Id.* at 525, 633 P.2d at 334. The present actions are also brought pursuant to A.R.S. § 37–249, and, therefore, the issue whether the 1985 sale is void was appropriately first considered by the Commissioner, and the Commissioner's letter finding that the sale was not void constitutes an appealable decision pursuant to A.R.S. §§ 37–132(A)(8), 37–133(A), and 37–134.

▪ As a second procedural barrier to Waddell's actions, the Land Department argues that Waddell had no standing to request the court to void the 1985 sale because he had lost his interest in the property by de-

faulting under the terms of the certificate of purchase. The trial judge held that Waddell has the same rights as any citizen of Arizona to file an action to void the sale of school trust property for claimed constitutional and statutory violations. *See Kadish v. State Land Dep't*, 155 Ariz. 484, 747 P.2d 1183 (1987), *aff'd*, *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989) (Arizona taxpayers sued to void mineral leases). We agree. Moreover, Waddell's action under A.R.S. § 37–249 sought return of the approximately $3.5 million he had paid on the property. Surely, Waddell had standing to seek that recovery.

▪ Finally, the Land Department argues that these actions are untimely. We agree with the trial judge that the limitations statutes do not apply to actions claiming that a sale of school trust land is void. In addition, A.R.S. § 12–821 does not apply to administrative review actions. *Cochise County v. Borowiec*, 162 Ariz. 192, 781 P.2d 1379 (App.1989). In any event, the actions were filed within the six-year limitations statute applicable to actions on contracts. A.R.S. § 12–548. We thus find them timely.

## MERITS

Waddell's basic contention is that the 1985 sale violated the Arizona Constitution and two statutes. As a result, by operation of a third statute, the sale is void. The following constitutional and statutory provisions apply:

Article 10, section 11 of the Arizona Constitution, as amended effective December 5, 1918, provides:

No individual, corporation or association shall be allowed to purchase more than one hundred sixty (160) acres of agricultural land or more than six hundred forty (640) acres of grazing land.

This constitutional limitation is restated in A.R.S. § 37–240:

No person may purchase more than six hundred forty acres of grazing land, or more than one hundred sixty acres of land

*susceptible of immediate use for agricultural purposes.*

(Emphasis added.)

In addition, A.R.S. § 37–234 provides:

Sales of agricultural land ... shall not exceed two hundred thousand acres in any one year of lands *susceptible of immediate use for agricultural purposes,* except those susceptible of irrigation from an established reclamation project. No more than three hundred twenty acres of a section shall be sold in any one year.

Finally, A.R.S. § 37–249 provides:

A sale made by mistake or not in accordance with law, or obtained by fraud, is void and the certificate of purchase issued thereon is void.

This statute also requires a refund of monies paid and compensation for improvements if the sale is voided.

Waddell argues that, because the land he purchased in 1985 was "agricultural" or "susceptible of immediate use for agricultural purposes," these constitutional and statutory provisions were violated and the sale was void.

Before discussing this argument, we dispose of the Land Department's contention that these provisions are simply inapplicable because the property sold was not "agricultural." The Land Department argued that, because the land was classified as "commercial" land at the time of the sale and both the valuation of the property and the amount Waddell paid at the auction reflect a commercial valuation, the property was not subject to these constitutional and statutory limitations. The trial judge found that, despite the statutory classification of the property as commercial, the property was agricultural land because it was actually used as a farm both before and after the sale. However, the trial judge stated that this result might have been different had the Commissioner classified the property pursuant to statutory procedures rather than relying on operation of the exchange statutes. *See Bettwy v. Black Canyon Greyhound Park, Inc.,* 119 Ariz. 227, 580 P.2d 365 (App.1978) (Commissioner's unappealed decision of classifying school trust lands is conclusive).

Although the Arizona Constitution does not define "agricultural" land for purposes of the purchase restrictions, A.R.S. §§ 37–234 and 37–240 limit the sale of school trust land "susceptible of immediate use for agricultural purposes" to 320 acres per section per year and 160 acres per person. In addition, the definitional section of Title 37 provides that land classifiable as "agricultural lands" cannot also be "commercial lands" because these terms are mutually exclusive. A.R.S. § 37–101. Because the land was used as an active farm both before and after the auction sale, the land clearly was "susceptible of immediate use for agricultural purposes," and therefore was agricultural rather than commercial land under the terms of A.R.S. §§ 37–324 and 37–240. The trial judge properly so held. We turn then to whether the sale was void.

In 1910, the United States Congress passed the Arizona–New Mexico Enabling Act. Act of June 20, 1910, Pub.L. No. 219 (ch. 310), 36 Stat. 557 (Enabling Act). Sections 19 through 35 authorized residents of the Arizona territory to form a state government under the terms of the Enabling Act. *Fain Land & Cattle Co. v. Hassell,* 163 Ariz. 587, 588, 790 P.2d 242, 243 (1990); *Kadish,* 155 Ariz. at 486–88, 747 P.2d at 1185–87. Sections 24 and 28 of the Enabling Act granted specified federal lands to the proposed State, to be held in trust "for the support of common schools." Disposition of school trust land was subject to specific restrictions, and any disposition or use of such land "not made in substantial conformity with the provisions of [the Enabling] Act shall be null and void." Enabling Act, § 28; *Fain,* 163 Ariz. at 589, 790 P.2d at 244. *See also Murphy v. State,* 65 Ariz. 338, 181 P.2d 336 (1947).

Pursuant to the requirement of Section 20 of the Enabling Act, the Arizona Constitution included a consent to and adoption of the Enabling Act's restrictions on the disposition of school trust land. Ariz. Const. art. 20, ¶¶ 12, 13; *Fain,* 163 Ariz. at 589, 790 P.2d at 244. As previously indicated, article 10 of the Arizona Constitution and various statuto-

ry provisions also placed specific limitations on the disposition of agricultural land.

The Land Department argues that these restrictions are in violation of the Enabling Act, and are, therefore, void because their purpose is to benefit Arizona settlers rather than maximize the return to the school trust. To support this argument, the Land Department points to a statement made by a Mr. Ellinwood at the Arizona Constitutional convention of 1910 urging the passage of the 160 acre limitation on the ground that this limitation would "benefit the bona fide settlers" of Arizona, rather than large corporations. John S. Goff, ed., *The Records of the Arizona Constitutional Convention of 1910* at 712–13 (hereafter, *Records* ). We find that the Land Department reads the *Records* too narrowly. Earlier in the same discussion about whether to include the 160 acre and other sale restrictions in the Arizona Constitution, convention delegates discussed their fear that large corporations would quickly purchase large tracts of school trust land with little competitive bidding and hold these tracts for speculative purposes, an event considered to be to the long-term detriment of the trust:

> [Mr. Parsons:] It seems that the gentlemen are unduly anxious to dispose of the inheritance of the schools of the future. It seems that they are anxious to get the land upon the market at the earliest possible moment. If these lands are reduced to money and the money placed at interest there will of course be some income but the land you have sold will be doubling in value perhaps every ten years, and the return products of the land will equal the interest of the money received from the sale of the land, and you would then have the land left, and you can always sell the land for what you could sell it for at this time ... I believe it is the best policy for the new state to hold her lands, for the time will come when public lands will be in demand far more than they are at this time. I should look forward to the future, and not squander the great inheritance

this state has in these lands for a mere mess of pottage.

*Records, supra,* at 707–08. When considering limitations on the disposal of school trust land, the delegates to the constitutional convention considered the long-term needs of the trust rather than the immediate benefit that might be had if the state immediately sold large tracts to the only parties likely to be able to purchase these large tracts: large corporations. In this context, it appears likely that Mr. Ellinwood's comment that the 160 acre limitation would benefit the settlers rather than corporations equated benefit to the settlers with benefit to the trust because it is these future settlers who will benefit from the increased return to the school trust.

In any event, the comments of three or four delegates to the constitutional convention do not necessarily indicate the intention of the drafters of the constitution as a group. It is clear from the language of the constitution that the Arizona Constitution placed more restrictions on the sale of school trust land than did Congress in the Enabling Act. The Arizona Supreme Court has held that the Arizona Constitution's greater restrictions provide a distinct and complementary level of protection to the trust. *Fain,* 163 Ariz. at 589–91, 790 P.2d at 244–46; *Deer Valley Unified School Dist. No. 97 v. Superior Court,* 157 Ariz. 537, 539–42, 760 P.2d 537, 539–42 (1988).

We do not need, at this juncture, to determine whether the constitutional and statutory provisions do in fact provide a benefit to the trust.[4] Rather, in our opinion, the question is whether A.R.S. § 37–249, which makes "void" all sales made "not in accordance with law," can be interpreted to be compatible with the Enabling Act and prevailing case law in ensuring "that the trust receives the most benefit possible from the trust lands." *See Fain,* 163 Ariz. at 595, 790 P.2d at 249.

We first note that both the Enabling Act and the Arizona Constitution void only those sales of school trust property that are not in

---

4. Waddell argues that more bidders would be willing to participate in sales of small parcels, thus increasing the price. On the other hand, whether today, as compared to 1918, a 160 acre

parcel of agricultural land is a viable economic unit amenable to competitive bidding is subject to question.

"substantial conformity" with the Enabling Act. Enabling Act, § 28; Ariz. Const. art. 10, § 8. As was stated in *Fain*, in determining whether all exchanges of school trust were void so as to preclude the retroactive application of the ruling in *Fain:*

> [The] provisions of our constitution do not nullify all dispositions of trust land not made in strict compliance with article 10 of the constitution. *The only dispositions of trust land that are nullified are those that do not comply with the Enabling Act....*

163 Ariz. at 596, 790 P.2d at 251 (emphasis in original).

Although this statement may, in its ultimate application, go too far, it does provide a platform to begin our analysis of A.R.S. § 37–249 in this case. This is so because, contrary to the express terms of that statute, the legislature could not have intended that every violation of law, no matter how trivial, or no matter what the effect on the school trust land that violation may cause, could void a sale of school trust land that was otherwise made in substantial conformity with the law. For example, article 10, section 3 of the constitution provides that sale of land shall be "published once a week for not less than 10 consecutive weeks." Assuming that publication occurred only for 9 weeks, but that violation had no effect upon the value received by the sale, could either the Land Department or the purchaser void that sale five years later based upon such a technical violation of the Arizona Constitution on the basis of A.R.S. § 37–249? We believe not. Our reading of *State v. Boyd*, 60 Ariz. 388, 138 P.2d 284 (1943), confirms this belief.

In *Boyd*, approximately 2000 acres of trust land was offered for sale in various parcels. At issue was the validity of a 4.82 acre parcel sold at that offering. Publication of the sale was made in the "Gilbert Enterprise," a newspaper published in Gilbert, Arizona. The particular 4.82 acre parcel was located closer to Tempe, Arizona, than to Gilbert, although the major portion of the property offered was located closer to Gilbert than to Tempe. This became important because the Enabling Act, the Arizona Constitution, and the statutes required publication in "the newspaper of the circulation which shall then be regularly published nearest to the location of the lands so offered." *See* Ariz. Const., art. 10, § 3; Ariz.Code 1939, §§ 11–407 and – 408. The court noted that, because the 4.82 acre parcel was closer to Tempe than to Gilbert, there was not a literal compliance with the Enabling Act, constitution, or statutes.[5] However, the court validated the sale on the basis that there was substantial compliance with the notice requirements because publication occurred in a newspaper nearest where a major portion of the property offered for sale was located. *Boyd*, 60 Ariz. at 394, 138 P.2d at 286.

The teachings of *Boyd* and *Fain* are that not all violations of the law result in a sale being void. Therefore, A.R.S. § 37–249 should not be interpreted to require that result. Rather, in our opinion, "void" as used in A.R.S. § 37–249 actually means "voidable" except where the violation is not in substantial compliance with the Enabling Act. We reach this interpretation because our directive is to "ascertain and give effect to the intent of the legislature." *McIntyre v. Mohave County*, 127 Ariz. 317, 318, 620 P.2d 696, 697 (1980), *quoting Mardian Constr. Co. v. Superior Court*, 113 Ariz. 489, 492, 557 P.2d 526, 529 (1976). Given our previous conclusion, based on *Fain* and *Boyd*, that the legislature could not have intended every possible technical violation to void a school trust sale made in substantial conformity with the law, we construe the word "void" in A.R.S. § 37–249 to mean "voidable"; that is, subject to rescission or ratification, rather than "void" in the sense of being incapable of ratification or disaffirmance. *See, e.g., Hodges v. Hodges*, 118 Ariz. 572, 578 P.2d 1001 (App.1978) (word "void" in annulment statutes construed to refer to "voidable" marriages); *Collier v. General Exch. Ins. Corp.*, 58 Ariz. 122, 118 P.2d 74 (1941) (insurance

---

5. The analogous predecessor to A.R.S. § 37–249 provided, at the time of the sale in *Boyd:*

> Any sale made by mistake, or not in accordance with law, or obtained by fraud, shall be void and the certificate of purchase issued thereon shall be void, and the holder of such certificate shall surrender the same to the Commissioner....

Ariz.Code 1939, § 11–419.

policy provision rendering contract "void" in certain circumstances construed to mean "voidable"). Because the parties do not contend this sale violated the Enabling Act, we conclude that it is merely voidable, not void, if otherwise in substantial conformity with the law.

If, then, the sale is only voidable, should Waddell be entitled to rescind his transaction with the state? This is, indeed, the relief Waddell requested in the trial court, and, in essence, is the nature of the relief provided if the transaction were voided under A.R.S. § 37–249.[6]

We begin this inquiry by first noting that rescission is governed by equitable principles. *Mahurin v. Schmeck,* 95 Ariz. 333, 390 P.2d 576 (1964). Second, we note that, although the limitation in the constitution on sales of agricultural land is not in the same category as the "technical" violation dealt with in *Boyd,* the reason this property was not placed in a commercial category not subject to these limitations does approach that "technical" status. As the trial judge properly noted, the only reason she was not allowed to question the commercial classification that was placed on the property was because the Commissioner had not taken the formal steps required by statute to make this characterization, but had instead relied on the statutory "pass-through" classification of the property for which this land was exchanged.

Finally, we note that the Enabling Act does not contain a limitation on the sales of agricultural land. Thus, with these observations in mind, we turn to the equities weighing for or against rescission in this case.[7]

First, it clearly appears on this record that both the Land Department and Waddell relied on the Land Department's classification of the property as commercial pursuant to the requirements of the Arizona exchange statutes. Waddell admits in his affidavit that he knew at the time of the sale that the property was used as a farm and Arizona law set acreage limitations on the sale of agricultural property. The Land Department assumed the constitutionality of the exchange statutes, which were not declared unconstitutional until *Fain,* almost five years after the sale. Based on these statutes, the Land Department did not see any need to reclassify the property as commercial subject to an interim, special use as agriculture. *See Havasu Heights,* 158 Ariz. at 552, 764 P.2d at 37 (holding land for speculation is a legitimate commercial use; grazing on land so classified subject to a special use permit). Because both parties relied on the commercial classification of the property at the time of the sale, this factor weighs in favor of upholding the validity of the 1985 sale.

Second, the purposes of the constitutional and statutory provisions limiting one person's purchase of agricultural land to 160 acres and limiting the sale of agricultural land in

6. The statutory remedy provided for a voided sale is as follows:

 The holder of the certificate [of purchase] shall surrender it to the state land department. The department shall ... refund the money paid thereon to the holder of the certificate, and make compensation to the holder for the actual value of the improvements placed on the land by the purchaser. The value shall be determined by the department and paid from the general fund.

 A.R.S. § 37–249. This provision thus codifies the equitable remedy of rescission, which allows an injured party to avoid a contract upon restoration of the *status quo. See generally Restatement (Second) of Contracts* § 7 (1981) (discussing "voidable" contracts).

7. Although the trial judge did not consider the equities for or against rescission in this case, we believe we can determine this issue as a question of law in view of the undisputed facts. *See, e.g.,*

*Dewey v. Arnold,* 159 Ariz. 65, 71, 764 P.2d 1124, 1130 (App.1988) ("What constitutes a reasonable time in which to communicate an intention to rescind is a question of fact 'unless the facts are such that only one inference could be derived therefrom in which case it would become a question of law'") (quoting *Mahurin v. Schmeck,* 95 Ariz. 333, 340, 390 P.2d 576, 580 (1964)). Additionally, the equitable factors we consider in this appeal are similar to those considered for the first time on review by the supreme court in *Fain* in its consideration of the validity of past exchanges. 163 Ariz. at 597, 790 P.2d at 252 (balancing the equities). Thus, because the facts are undisputed and the full record is before us, in the interest of judicial economy we decline to remand this matter to the trial court for an additional determination of the equities of rescission.

one section to 320 acres per year appear to be to preserve trust property for future generations and to ensure that the greatest number of bidders are able to participate in the auction for such land. It appears from the record that there were numerous bidders at the auction sale and the bidding price was significantly more than the appraised value. The parties agree that the purpose of the laws regulating the sale of school trust land is to benefit the trust, not the land purchaser. This factor also weighs in favor of upholding the 1985 sale.

Next, we further find that voiding the 1985 sale will work a hardship to the trust because the trust will be required to refund to Waddell in excess of $3.5 million plus interest, plus approximately $60,000.00 in attorneys' fees, and in return receive land that has significantly decreased in value since the time of the sale. In addition, if this sale is declared void, numerous tracts of land previously sold pursuant to classifications set by the exchange statutes are subject to nullification and title to these lands will become clouded, despite the fact that the Arizona Supreme Court in *Fain* specifically refused to give retroactive effect to its decision invalidating the exchange statutes. *See* 163 Ariz. at 597, 790 P.2d at 252. On the other hand, if this court fails to void the 1985 sale, Waddell suffers significant hardship: he loses the amounts paid and he loses the property due to his default in payment upon learning he potentially did not have clear title. However, we also note that a party is not entitled to rescission under equitable principles of Arizona law if he has not tendered full performance of his own obligations under the contract. *First Citizens Fed'l Sav. & Loan Ass'n v. Worthen Bank & Trust Co.*, 919 F.2d 510 (9th Cir.1990) (applying Arizona law). This factor therefore weighs against rescission.

■ On balance, we find that the equities weigh in favor of not voiding this sale. Both parties knew of and relied on the classifica-

tion of the property as commercial despite the fact that both parties apparently knew the property was actually used as a farm and knew that Arizona law had restrictions as to the amount of agricultural acreage that could be purchased at a single sale. In addition, Waddell waited almost five years after the sale, during which time the economic land market could be assessed, before seeking his relief. Although we have held the statute of limitations not to be applicable, principles of equity require a faster finger on the trigger in situations like this. *See, e.g., Dewey v. Arnold*, 159 Ariz. 65, 764 P.2d 1124 (App. 1988) (persons seeking rescission must act promptly in stating an intent to rescind).

Although we agree on most points made by the thoughtful and well-reasoned decision of the trial judge, we hold that A.R.S. § 37–249 does not void this sale and that, on balance, rescission is not a proper remedy under the circumstances of this particular transaction. We therefore reverse the judgment of the trial court that voided the 1985 sale.

Both parties have requested attorneys' fees on appeal. Because Waddell is not a prevailing party, we deny attorneys' fees on that basis. Also, because we determine that this appeal was properly brought under the Administrative Review Act, the state's right to collect attorneys' fees is controlled by A.R.S. § 12–348.[8] At the time of oral argument the state conceded that it was not entitled to attorneys' fees under that statute. We therefore deny the state's request for attorneys' fees.

The judgment of the trial court in CV 90–20689 is reversed and this matter is remanded for further proceedings consistent with this opinion. In light of this disposition, the trial court's dismissal in CV 90–31231 is affirmed.

GERBER, P.J., and TOCI, J., concur.

---

8. A.R.S. § 12–348 provides:
   A. In addition to any costs which are prescribed by statute, a court shall award attorneys' fees and other expenses to any party *other than the state* ... which prevails by an adjudication on the merits in any of the following:
      2. A court proceeding to review a state agency decision....
   (Emphasis added.)